AVERILL and others *against* TAYLOR, VOORHEES and another.

The assignees of a term of years may, to protect their estate, redeem a mortgage covering the premises given by their lessor prior to the lease.

It will make no difference if the leasehold premises consist of but a part of the lands covered by the mortgage.

Upon the redemption the redeeming party has a right to an assignment of the mortgage redeemed, and, if it be recorded, a right to require the mortgagee to acknowledge the assignment.

An instrument in writing between the owner of lands and a person to whom he had by parol agreed to let them for a term of years, and who had been in possession under the parol agreement for some months, antedated to the time the tenancy commenced, by which the owner "agrees to lease and rent" them to the other at certain specified rents and upon certain conditions, and the latter "agrees to rent the said premises on the terms and conditions above expressed" is a demise and not a contract to give a lease.

This action was brought by the plaintiffs as the assignees of a lease of a part of certain real estate, known as the Empire block in Syracuse, to redeem a mortgage made by the defendant Voorhees and one Norton to the defendant Taylor, for the purchase money of the whole, and which Taylor by arrangement with Voorhees was foreclosing. It was tried before Mr. Justice ALLEN, as a referee, and came before the supreme court upon appeal from the judgment entered upon his report which was there affirmed. The following facts appeared by the pleadings and proofs: On the 8th day of December, 1848, the defendant Taylor owned the *Empire block* in Syracuse. This was erected in

1844 and 1845, at a cost of upwards of $60,000, and was intended for business purposes. The first floor and cellar were occupied with stores and shops, and the upper rooms constituted an extensive public house, called the *Empire House,* with accommodations for a great number of guests. On the 8th day of December 1848, Taylor sold the Empire block to the defendants Voorhees and Norton, Voorhees receiving title to three undivided fourths, and Norton to one fourth thereof. Voorhees and Norton made the mortgage in question to secure to Taylor $25,000 in five equal annual payments from the first day of December 1852, with semiannual interest, and with a provision that in case any interest thereon should not be paid within twenty days after it became due, then the whole principal should become immediately payable. In the latter part of 1848 or early in 1849, Voorhees made a verbal agreement with Philo N. Rust, to lease to him the Empire House for ten years from the first of May 1849, upon certain terms and conditions, a memorandum of which was made by Thomas T. Davis, and left with him to enable him to prepare a written indenture to be executed by the parties, which agreement was from time to time varied in its particulars. In pursuance of the agreement, Rust entered into possession of the premises, made valuable improvements upon them and occupied them as a public house, from May 1st 1849, until the latter part of December of the same year, at which time they executed an instrument in writing, dated March 1st 1849. The portions of this instrument which are material to the questions disposed of in the case are as follows:

" Agreement made the first day of March 1849, between James L. Voorhees of Lysander, in the county of Onondaga, of one part, and Philo N. Rust, of the city of Syracuse of the second part witnesseth, that the said Voorhees agrees to lease and rent to said Rust, for the term of ten years commencing on the first day of May 1849, at and for the rents and considerations hereinafter specified, those

premises on block No 81, in the city of Syracuse, known as the Empire House, occupied by Joel Cady, * * * * as follows: [Clauses containing reservations of the rent to be paid, the manner of discharging taxes and keeping up the repairs were then inserted.] The said Rust agrees to rent the premises on the terms and conditions above expressed * * * The said Rust, is to keep the said premises in good order and to observe the ordinances of the city in respect to fires and to surrender quiet and peaceable possession of the premises at the end of the term * * * . * It is understood that this lease includes all of the premises known as the Empire House, excepting those parts of said premises now occupied as stores, &c."

On the 5th of October 1850, the following agreement was appended to the first instrument.

"Rust and Voorhees further agree for value received as follows: said Rust is to leave the enunciator and its attachments to said Voorhees at the end of the foregoing lease without charge: also all gas pipes, but he reserves the right to take away and dispose of the burners and attachments. Rust is also to keep in good order, and repair the roof over the linters which he now occupies for drying clothes. Voorhees in consideration thereof is not to charge any rent for the gas pipes and fixtures put in by him. Oct. 5, 1850."

On the 6th day of February 1851, Norton conveyed to Voorhees his fourth of the premises, subject to the mortgage to Taylor, the payment of which was assumed by Voorhees, and Voorhees gave Norton a mortgage upon the fourth conveyed, for $5,797.50, to secure a part of the purchase money.

Rust continued in the occupation of the premises until Febuary 10, 1851, when he became insolvent, and assigned all his property including his interest in the premises for the benefit of his creditors, and the plaintiffs became purchasers of this interest from the assignees, and went into possession. Rust subsequently died insolvent. The semi an-

nual interest upon the mortgage held by Taylor accruing July 1, 1851, not having been paid, he on the 23d of July 1851, commenced proceedings to foreclose it and sell the mortgaged premises. While these proceedings were pending, the plaintiffs tendered to the defendant Taylor $26,700 being more than the amount of principal and interest on the mortgage with the costs then made in the foreclosure proceedings, and demanded an assignment of the mortgage. Taylor refused to receive it and transfer the mortgage, but offered to receive it in satisfaction thereof and discharge it.

Upon the foregoing facts the referee found as conclusions of law:

1st. That the instrument bearing date March 1, 1849, between Voorhees and Rust, was a present demise of the premises herein described upon the conditions and for the term therein specified. 2d. That Rust became and was possessed legally and equitably of an estate for the term of years therein expressed. 3d. That the term was transferable by assignment, and the plaintiffs were by the assignments vested with it. 4th. That the plaintiffs as tenants by virtue of the assignments were entitled to redeem the premises from the mortgage held by Taylor, and to be subrogated to all his rights as mortgagee, and to demand and receive an assignment of the bond and mortgage. The referee thereupon reported that judgment should be given, that the plaintiffs might redeem upon paying Taylor the amount owing on the mortgage with the costs of the proceedings for foreclosure; that upon such payment he assign the bond and mortgage to them, and acknowledge the execution of the assignment, and that the defendants Taylor and Voorhees pay the plaintiffs the costs of this action. The defendants Taylor and Voorhees appealed to this court.

*Q. A. Johnson* for appellants. I. The court has no jurisdiction to compel the defendent Taylor to assign his securities to the plaintiffs for the purpose of aiding or protecting them in their speculation. It has no power to require him

to assign to them the mortgage debt. Taylor did not refuse to receive the money in payment of the debt; he only refused to sell the debt.

II. An assignment of the mortgage is not necessary to protect any legal or equitable rights of the plaintiffs in the premises. If they are entitled to be subrogated, that object will be immediately accomplished upon the payment of the debt. In equity a mortgage is not extinguished by payment made by a surety, for the surety becomes immediately subrogated to the rights of the mortgagee, and may foreclose the mortgage in his own name. His right to foreclose is perfect, without a formal assignment of the mortgage. (*McLean* v. *Towle*, 3 *Sand. Ch.* 117.)

III. The plaintiffs are not sureties for Voorhees, or persons holding the equitable position of sureties. Nor are they creditors, or lien holders as against the premises in question. They are really the debtor party; because the rent is constantly accruing. They hold nothing more than "a contract for the possession and profits of land, for a determinate period, with the recompense of rent." (4 *Kent*, 85.) If they are really the tenants of the defendant, Voorhees, (as they claim to be, but which we deny), they can have no better position in regard to the mortgage, and the defendant Taylor, than Voorhees himself had, and now has. The tenant of a mortgagor, who seeks to redeem, must put himself in the place of the mortgagor. (*Keech* v. *Hall*, 1 *Douglass*, 22.) Voorhees has only the right to redeem on payment of the mortgage debt. He can not compel the mortgagee to assign the bond and mortgage for any purpose. Nor can he claim subrogation.

In the case of *Dunston* v. *Paterson*, which was decided in 1847, Lord Chancellor Cottenham remarked: " The mortgagor is to be put into the same position in which he stood before his mortgage; but it is said the mortgagee is not only to restore the estate, but is also to assign the debt, the object being to use this as a method to obtain money from a third party, for the payment of the mortgage

Averill *against* Taylor.

Counsel were asked to produce a case, but none was produced to show that the mortgagee can be compelled to do it. I want to see that I am bound to say that the mortgagee shall do so, when no stipulation to that effect is contained in the contract. "There is nothing to compel me to make such a declaration." (2 *Phillips Ch. Rep.* 345; *London Jurist, Vol.* 11, *page* 595-6.)

IV. Whether in this state a tenant for years ever had a right to redeem, may be considered a doubtful question. It has never been determined in a reported case. If the right has existed it has lain dormant, and has not been considered one of the conditions or incidents of the leasing contract. It has always been assumed that the tenant must rely upon the covenants contained in the lease.

V. But whatever may have been, or may now be the rights and remedies of the lessee, the naked assignee of a lease, who has not been accepted by the landlord, and has paid no rent, is not in a position to claim redemption, subrogation, and assignment, as is claimed in this case. If the right exists at all, it belongs to the lessee, and not to the assignee. The relation of landlord and tenant still subsists between the lessor 'and lessee. The assignee is only liable, at the election of the landlord, for rent and breaches which may accrue or happen during the time he may hold or occupy; and he may discharge himself at any time, by assigning over, even to a beggar. (*Onslow* v. *Carrie,* 2 *Maddock's Ch. Rep.* 330, 340; *Childs* v. *Clark,* 3 *Barb. Ch. Rep.* 52.) If persons holding such a position can redeem, be subrogated, and compel the mortgagee to assign to them his mortgage, it would be difficult to state any good reason why an ordinary tenant at will, or at sufferance, or from year to year, or month to month, might not claim and have the same rights and powers.

VI. The contract between Rust and Voorhees, on which the plaintiffs rely as the foundation of their action, is not a lease or demise of the premises in question. It is only

Sel. IV.—7.

an agreement to demise or lease. No estate was thereby created.

The instrument contains no terms of grant, or *present demise*. Nor are there any operative words to create or convey an estate. The usual terms by which a lease is made, are, "demise, grant, and to farm let." Neither of those terms, nor equivalent words are used in this instrument. It is not drawn in the ordinary form of a lease; but it is exactly in the form of an ordinary contract to lease or convey lands, or to sell property, or perform acts of any kind. Both parties agree to do certain acts. Voorhees agrees to lease and rent to Rust, certain premises, for ten years, upon certain terms; and Rust agrees to rent the premises on the terms specified. The words, " Voorhees agrees to lease and rent" would seem to be about equivalent to the words, "I engage to give him a lease." (*Roe* v. *Ashburner*, 5 *T. R.* 163.) No instrument similar to this has ever been held to be a lease. But in some cases, where the evidence was clear and strong that the parties intended to make a lease, and to create a *present demise*, but had used too few, or too many, or improper words to express their ideas, the intention has prevailed over the words. (*Jackson* v. *Delacroix*, 2 *Wend.* 433.)

VII. The right to redeem does not necessarily carry with it the right to be subrogated in place of the mortgagee, with power to enforce the mortgage debt against the mortgagors. Redemption is a legal right; subrogation a mere equitable one. It applies only in the case of a surety, or one standing in the equitable position of a surety, and has never been applied in the case of a tenant for years. He is in no condition to claim it. The landlord is neither his debtor nor his principal. His interest rests on contracts for the possession and profits of the land, and is not a lien upon it, and it is conditional upon his performing the conditions of the lease. He can not dispute his landlord's title. Could he foreclose a redeemed mortgage during his term?

Averill *against* Taylor.

G. F. *Comstock*, for respondents, referred to the follow-
ing authorities to show the right of a tenant for years to
redeem a prior mortgage to protect the term; 4 *Kent.
Com.* 162; 22 *Pick.* 401; 10 *Powell Mortg.* 263; 2 *Cruise
Dig. Tit.* 15, *Ch.* 2, § 8; *Comyn's R.* 661; *Douglass* 22; 9
*Cow.* 409.) He also cited 4 *Kent. Com.* 163; 12 *Ves.* 59;
3 *Barb.* 534; 9 *Cow.* 409; and 2 *Story Eq.* § 1023, to
show the right of a party redeeming to be subrogated in
place of a mortgagee, and to receive an assignment of the
mortgage.

Morse, J.   The important point of inquiry in this case
is, whether a tenant for years has a right to redeem
the mortgage of his lessor, made before the lease under
which the tenant claims.   I understand the law to be as
well settled, as the reason and justice of the rule is clear,
that any one who holds the actual relation of surety for
the mortgage debt, charged upon land in which he has an
interest, although his liability as such surety extends no
farther than to lose his interest in the land, has a right
to redeem, for the protection of such interest.   And I sup-
pose it to be equally well settled, that his right as surety
in such a case, and upon his redeeming, is, to be subrogated
to the rights and to occupy the position of the creditor from
whom he redeems.   These propositions, I do not understand
to be controverted, but it is argued by the defendant's coun-
sel, that the tenant for years has no interest in the land,
but an interest in the term only.   It is said in the defen-
dant's points, and Chancellor Kent is quoted as authority
for saying, that a tenant for years has no interest in, or legal
or equitable lien upon the land.   " He has only a contract
for the possession and profits of the land with the recom-
pense of rent."   At the common law, a tenant for years,
before entry, was held to have only an interest in the term,
and only possession of *the term* after, entry and not an in-
terest in the land, " the possession or seizin of the land
remaining still in him who hath the freehold." (2 *Bl*

*Com.* 144; *Coke Litt.* 466.) Besides other reasons peculiar to the feudal system, there was the want of notoriety of livery of seizin in the creation of these estates, which rendered them objects of disfavor to the common law, as they were sometimes made the instruments of fraud. They could be defeated by a common recovery, but that went upon the ground that the recoveror came in under a paramount title, to that of the lessor under which the tenant for years held his term. The lessor, not having title, or his title failing and giving place to a superior title, the term of course fell with it. Under the common law aided by occasional statutes, estates for years gradually became valuable, were recognized and protected. They take their place under our statutes as estates in land. (1 *R. S.* 722, § 1.) They are not spoken of as terms or as interests in terms, but ranked as estates in land, and called *chattels real.* When such estates were mere terms, and the tenant for years was deemed not even to have possession or seizin of the land, although occupying it, he had no estate, nor interest in the land, but only in the term. But now estates for years may be sold on execution, as real estate. (2 *R. S.* 359, § 5, *and* 367, § 24.) It is true the distinction is preserved between freehold estates, and chattels real. (2 *R. S.* 722, § 5.) This was desirable, in order to preserve the law of succession, and not to break in upon the rights of personal representatives, widows and creditors of deceased persons, and perhaps for other reasons. A rule of property so long acted upon could not be suddenly subverted without great wrong, to such as had acted upon the faith of the rule. Chattels real are created continually under assessment laws in cities and villages, for hundreds, and not unfrequently for thousands of years, and that too, without any charge for annual or other rent, but upon the payment down of a sum certain at the commencement of the term. Such estates may be, and often are of far greater value than a life estate which is a freehold, yet they are only estates for years and mere chattels. It would be strange

at this day, and after the great changes which have taken place in the law relating to estates for years, if one having an estate for a thousand years in land, by lease or grant from the tenant in fee, could not redeem from a prior mortgage, and save his estate, and that upon the ground that at common law, he had no interest in the land, but only in the term. It was said upon the argument, that an estate for years, may be only for a single year, or even for less than a year. A term may certainly be for a year only, or for a less time, and still be called a term of years. To the argument drawn from the possible shortness of the duration of an estate for years, it may be a sufficient answer, to say, that a mortgagor who is also a lessor subsequent to his mortgagee, of the mortgaged premises, who fails to protect his lessee by the payment of the mortgage, could not very well object that his lessee should protect himself by redeeming the mortgage. Besides, a court of equity would not be obliged to enforce a redemption that was merely frivolous, and for vexation. In a case like the present, the mortgagor is bound in equity and good conscience to permit his lessee to do that, which according to his contract, he ought himself to have done. As he has not paid his debt, which was his duty, for the protection of his tenants, he has no right to object that they should pay it, and upon such payment be subrogated to the original rights of the mortgage creditor. By his lease the mortgagor made his lessee a surety, in so far as the estate for years in the land granted to, and held by his lessee stands pledged for the payment of the mortgage debt; and having by his solemn contract placed him in this position of surety, he ought not to be heard to object to his, or his assignee's exercise of the rights of a surety. As to the mortgagee, he is to receive his money. And when paid by the mortgagor he is also to deliver the bond and mortgage to be canceled, and the mortgage being recorded, to execute if tendered to him, such a certificate as will cancel the record of the mortgage. But if the lessee redeem,

the mortgagee is to assign to him the bond and mortgage without covenants. It can make no difference to the mortgagee which he does if he gets his money. The mortgagor who has leased the mortgaged premises, and who neglects to pay the mortgage debt can not be injured. All he has to do is to perform his duty and pay. It can make no difference to him to whom he performs this duty, so that when it is performed, he can be protected by a proper discharge from liability. But if the lessee can not redeem, he may be very injuriously affected. A sale of the land to the mortgagee, or to a stranger will destroy his estate for years. To protect himself he would be obliged to keep himself always in readiness to purchase and pay for the land when sold upon foreclosure, and obliged to pay the value of the land discharged of his estate for years. In case of a strict foreclosure, not leaving a right to redeem, he would be without any remedy whatever. If it were done by collusion, and for the purpose of cutting off his estate for years he could not complain. It would not matter to him what remedy the creditor chose to adopt. It will not be claimed, I apprehend, that the lessee would be bound or affected by any form of foreclosure to which he was not a party; and wherefore make him a party to a strict foreclosure if he could not redeem? If he redeems he is bound fully to satisfy the mortgagee, who is entitled to the entire payment of the mortgage debt. (10 *Paige*, 49.) No harm can possibly happen to any one, in such a case as this, to allow the lessee to redeem, and to be put in the place of the mortgagee. It is plain that harm, which would be an equitable injury, would happen to the plaintiffs, if denied the right of redemption. The judgment should be affirmed.

TAGGART, J., expressed a doubt whether the plaintiffs holding an interest in only a part of the mortgaged premises, could enforce a redemption of the whole, without bringing before the court the persons interested in the

residue. It was, however, agreed by the whole court that they could, and that no injury could be done to the absent parties by allowing such redemption, as the redeeming par-.ties would merely take the place of the mortgagee.

JOHNSON, J., was of opinion that costs should not have been given to the plaintiffs, but as their allowance rested in the discretion of the court below, he was in favor of affirming the judgment.

JEWETT and MASON, JJ., were for reversing the judgment, so far as it allowed costs to the plaintiffs, and affirming it in other respects.

All the other judges were in favor of an affirmance.

Judgment affirmed.