FREDERICK W. MAHNK and Another, Respondents, v. CHARLES I. BLANCHARD and Others, Respondents, Impleaded with IROQUOIS GAS CORPORATION, Appellant, and JAMES BAILEY and Others, Defendants.

Fourth Department, November 11, 1931.

*Thomas F. Fanning,* for the appellant.

*Charles W. Strong,* for the plaintiffs, respondents.

*Willard H. Ticknor,* for the defendants, respondents.

EDGCOMB, J.   The real estate involved in this foreclosure action was formerly owned by Isaac Blanchard.   On May 26, 1875, he mortgaged the property in question to the Erie County Savings Bank.   On August 25, 1928, the bank assigned the mortgage, together with the accompanying bond, to the plaintiffs in this action.   Mr. Blanchard died intestate, leaving as his only heirs at law five children, Mary Jane B. Bailey, Martha B. Whitehead, Maria B. Francis, Nancy Blanchard and Charles I. Blanchard, who, upon the death of their father, became seized of the mortgaged premises as tenants in common.   On October 20, 1926, Charles I.

Blanchard and his sister Nancy, two of said tenants in common, leased the property covered by said mortgage to the appellant Iroquois Gas Company, " for the sole and only purpose of mining and operating for oil and gas, and of laying pipe lines, and building tanks, stations and structures to take care of said products " for a term of ten years from the date of said agreement, and as long thereafter as oil or gas was produced and marketed on said premises.

Appellant was made a party defendant in the foreclosure action upon the theory that it had a subsequent interest in, or lien upon, the mortgaged premises. The company appeared, and demanded notice of all proceedings, but failed to answer.

A few days after the commencement of the action the gas company offered to pay the entire mortgage indebtedness, including costs, upon delivery to it of an assignment of the bond and mortgage in process of foreclosure. No tender was made, as the exact amount of such indebtedness was unknown to appellant, and apparently could not be ascertained from plaintiffs' attorney, despite repeated requests for such information. Counsel for the plaintiffs questioned appellant's right to subrogation. Authorities bearing upon the subject were submitted to him, and negotiations were continued between counsel until a motion was made on January 27, 1931, for the appointment of a referee to compute the amount due upon the bond and mortgage. Appellant appeared and opposed the granting of such order, and again offered to pay the amount due upon the mortgage debt, together with interest and costs, and asked to be subrogated to the rights of the plaintiffs. Briefs were submitted, and decision was reserved. On March 9, 1931, a decision was handed down granting plaintiffs' motion. The order not only appointed a referee to compute the amount due, but contained a provision that, upon the coming in of the report of such referee, plaintiffs should have the usual judgment of foreclosure and sale of the premises described in the complaint without further notice to any of the defendants. On March 17, 1931, such judgment was granted without the knowledge of the appellant, notwithstanding the provisions of rule 190 of the Rules of Civil Practice, which provides that a defendant, who has appeared generally, but who has made default in pleading, is entitled to at least five days' notice of the time and place of the application for the judgment of foreclosure and sale.

The court was without authority to insert in the order of reference the provision giving to the plaintiffs the usual judgment of foreclosure and sale without further notice to the appellant. (*Citizens' Savings Bank* v. *Bauer*, 49 Hun, 238; 2 Fiero Particular Actions & Proceedings [4th ed.], 1493.)

As was pointed out by Judge BARTLETT, writing for the late General Term of the First Department, in *Citizens' Savings Bank* v. *Bauer* (*supra*), no court can say beforehand what the contents of a referee's report will be, and, without such information, has no authority to order in advance that it shall be approved, and that judgment shall be entered thereon.

Having appeared and demanded notice of all proceedings, appellant was entitled to advance information of the application for judgment. (*Dean* v. *Coddington*, 2 Johns. Ch. 201; *Knapp* v. *Burnham*, 11 Paige Ch. 330, 333.)

The general rule relating to notice is stated by Chancellor WALWORTH in *Knapp* v. *Burnham* (*supra*) as follows: "A defendant who has appeared in a cause is entitled to notice of every proceeding therein which may affect his interest injuriously; except in those cases where by the rules and practice of the court he is bound to watch the proceedings, so as to protect his rights without such notice."

Had application been made for judgment in the first instance, and had the court upon that motion seen fit to determine the amount due upon the mortgage indebtedness, which it might have done instead of appointing a referee for that purpose (Rules Civ. Prac. rule 256), the whole matter might have been disposed of at once, and the judgment granted in one sitting, and while all parties were present. That procedure, however, was not followed in this instance.

The practice adopted by the plaintiffs resulted in a delay of forty-nine days after the motion had been argued, and before the application was actually made for judgment. We think that the appellant was entitled to notice of such application.

The provision, contained in the notice of motion for the appointment of a referee to ascertain the amount due, to the effect that the court would be asked to include in the order a direction that a judgment of foreclosure and sale be granted as a matter of course, upon the filing of the referee's report, does not comply with the rule. Such provision in the notice of motion gave to appellant no notion whatever of the time when or the place where the application for the judgment itself would be made. The order appointing the referee is not a judgment.

Had the appellant failed to appear upon the motion for an order of reference, it might possibly be argued that it had waived its right to further notice, or that it was not prejudiced by the procedure which was followed. But such was not the situation. Appellant did appear, and strenuously opposed the granting of the order. By its very conduct it gave notice that it had rights which it desired

to protect, and that it objected to the granting of any judgment in the action. Under these circumstances, it cannot be urged that there was a waiver of the requirements of the rule.

*People ex rel. Rosenquest* v. *Donnelly* (168 App. Div. 500) is not in conflict with the above holding. In that case a notice of motion for a judgment of foreclosure and sale was actually given to all the defendants who had served a notice of retainer. There was no appearance on the motion, and the application was not opposed. Instead of computing the amount due, the court appointed a referee for that purpose, and held the motion for judgment, and later granted it without further notice. It was held that, inasmuch as no one appeared in opposition to the application when it was first made, no further notice was necessary. That is not the case here. The only motion of which appellant had notice was for the appointment of a referee to compute the amount due.

If the failure of the plaintiffs to give the required notice of motion for judgment of foreclosure and sale was a mere technical irregularity, one which did not prejudice or invade a substantial right of the appellant, it might possibly be overlooked or ignored. The gas company had an interest here which was more than imaginary and illusive; it was real and substantial. We believe that it was entitled to an assignment of the bond and mortgage in process of foreclosure, upon payment of the full amount of the mortgage indebtedness, including interest and costs.

Subrogation is a creature of equity, and, broadly speaking, may be invoked whenever the denial of the right would be contrary to equity and good conscience. Its design is to further justice.

One who has an interest in property on which there is a mortgage, if it is necessary for the protection of his interest, may, as a general rule, pay the mortgage debt, and be subrogated to the rights and remedies of the holder thereof. (*Gerseta Corp.* v. *Equitable Trust Co.*, 241 N. Y. 418, 425, 426; *Twombly* v. *Cassidy*, 82 id. 155; *Cole* v. *Malcolm*, 66 id. 363, 366; *Bayles* v. *Husted*, 40 Hun, 376.)

Such interest does not have to be absolute. A contingent interest in property may be thus protected. (*Pease* v. *Egan*, 131 N. Y. 262.)

Subrogation, however, will not be decreed in favor of a mere stranger or interloper, because such a person has no interest to protect or preserve, and is not entitled to equitable relief. (*Acer* v. *Hotchkiss*, 97 N. Y. 395.)

It, therefore, becomes necessary to examine the record to see if the gas company has such an interest in the mortgaged property

as will entitle it, upon payment of the obligation, together with costs, to step into plaintiffs' shoes.

The rule is well settled that a lessee, whose lease is subsequent to a mortgage, has the right, upon payment or tender of the amount due, to demand of the holder an assignment of the bond and mortgage. (*Glennon* v. *Spencer*, 163 App. Div. 820; *Averill* v. *Taylor*, 8 N. Y. 44.)

We think that the fact that appellant's lease was executed by only two of the five tenants in common who owned the property does not change this rule.

One tenant in common may redeem from a mortgage lien in order to protect his interests. (Wiltsie Mort. Forec. § 1173.) The same rule applies to a person who stands in the shoes of one of several tenants in common by reason of an assignment or transfer of such tenant's interest.

In *Simonson* v. *Lauck* (105 App. Div. 82) it was held that one who was not a party to a foreclosure action, and who had no interest in or lien upon the mortgaged premises, but who, acting at the instance of one of five tenants in common who owned the property, offered to pay the mortgage debt, and all costs, was not a mere volunteer, and that he was entitled to an order compelling the plaintiff to assign to him the bond and mortgage in course of foreclosure.

We need not discuss the question of how far one tenant in common can bind his cotenant, or what rights the appellant has under this lease. Concededly, if the tenants in common who did not join in the lease authorized the others to act for them, or if they ratified the lease so as to make it their own, the agreement of the two would bind the others. (*Valentine* v. *Healey*, 158 N. Y. 369.) At any rate, the appellant cannot be said to be a mere volunteer, or one which has thrust itself into the picture without rhyme or reason.

The plaintiffs are not concerned with the extent or effect of the lease in question. Their only interest is to receive all that is coming to them upon this bond and mortgage, and to be reimbursed for the costs of the action. (*Mabbett* v. *Mabbett*, 29 App. Div. 609, 611.) Appellant stands ready and willing to pay them every penny they are entitled to. What more can the plaintiffs ask? It does not matter to them who pays their debt, and if they get their money how are they any worse off by assigning the obligation to the one who pays them?

So far as the other tenants in common are concerned, we fail to see how they can be prejudiced by a transfer of the bond and mortgage to the gas company. The property is now subject to the lien of the mortgage, and if the obligation be assigned to another, the assignee can do no more than the plaintiffs. The present

holders of the mortgage are demanding payment, and are foreclosing because their demand has not been complied with. Any one to whom the obligation is assigned could do no more. So how can any of the cotenants be harmed if the obligation finds its way into other hands? If the appellant should attempt to despoil the land, as seems to be the fear of the respondents, or to do anything which it has no right to do under the lease, the respondents have their remedy. The assignment of the mortgage to the gas company would not entitle it to commit waste upon the property. Any such attempt on its part could be quickly and easily stopped by any of the tenants in common. (Real Prop. Law, § 525, as added by Laws of 1920, chap. 930.)

We cannot see how any possible harm can come to either the tenants in common, who did not join in this lease, or to the plaintiffs, by the assignment to the appellant of the bond and mortgage under foreclosure, if plaintiffs are reimbursed for the amount of the debt and the costs of the action. We think that the gas company has some equity in the property which it can better protect by owning the mortgage. Under such circumstances, if the gas company is willing to make the plaintiffs good, and to pay them all that is due on the obligation, and the costs of the action, and run its chances of getting the money back on the sale of the property, it seems to us that every principle of equity calls for the enforcement of appellant's right of subrogation.

It is true that no actual tender of the mortgage indebtedness was made to the plaintiffs. All negotiations were had with their attorney, who assumed to speak for them. From the very outset he took the position that appellant was not entitled to an assignment of the bond and mortgage in process of foreclosure, even if it paid the mortgage debt. He refused, or at least neglected to inform appellant of the amount due upon the obligation.

The law does not require a useless formality. A formal tender is not necessary where a party has shown by act or word that it would not be accepted, if made. (*Strasbourger* v. *Leerburger*, 233 N. Y. 55, 60; *Cleveland* v. *Rothwell*, 54 App. Div. 14.)

Generally speaking, the rules governing the necessity for an actual tender are not so rigid or stringent in equity as in law.

We do not think that it is necessary to determine on this appeal whether a technical tender was necessary to entitle the appellant to an assignment of the bond and mortgage in process of foreclosure. The sufficiency of the tender was not questioned in the court below, and is not urged upon this appeal. We are dealing here with the irregularity connected with the granting of the judgment of foreclosure and sale. Inasmuch as it appears that such irregu-

larity was not merely a technical one, but affected a substantial right of the appellant, we need not scan the record with meticulous care to ascertain whether all the preliminary steps have been taken to entitle appellant to assert its right to subrogation. If this judgment is set aside, as we think it must be, the gas company will then be in a position to proceed in such manner as it may be advised is necessary to obtain the relief which it seeks.

Appellant is not forced to assert its remedy in a separate action, or by way of answer in the foreclosure suit. If the right to subrogation is clear, a motion for that purpose can be made in the present action. (*Twombly* v. *Cassidy*, 82 N. Y. 155; *Cole* v. *Malcolm*, 66 id. 363.)

The judgment of foreclosure and sale having been improvidently and improperly made, appellant's motion to vacate and set it and all subsequent proceedings aside should have been granted.

It follows that the order denying such relief should be reversed, and the matter remitted to the Special Term to proceed in such manner as may be proper upon any demand which appellant may make for subrogation. If appellant tenders the amount due the plaintiffs upon the bond and mortgage in process of foreclosure and the demand is refused, the money should be paid into court.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

Order denying motion to vacate judgment of foreclosure and sale reversed, with ten dollars costs and disbursements, and matter remitted to the Special Term to enable the appellant to proceed in such manner as it may deem proper. Appeal from order granting order of reference to compute amount due dismissed as academic in view of the decision herein.