WEINBURGH v. SAIER.

1. REFORMATION OF INSTRUMENTS—STATUTE OF FRAUDS—ADDITIONAL LAND.
   In suit for reformation of land contract for sale of parcel of a river front farm, designated on an unrecorded plat as lots containing eight acres of dry land, at $4,000, where lots contained substantially less area, provision of decree awarding to plaintiff an additional adjacent area of land which had been selected and acquired by purchaser by moving boundary stake with consent of vendor's agent is not sustained since a court may not, by decree, compel transfer of additional real estate under such circumstances in the absence of a written contract therefor (3 Comp. Laws 1929, § 13411).

2. VENDOR AND PURCHASER—TENDER—SUSPENSION OF INTEREST.
   Where it appears that a tender of sum payable by purchaser under a land contract would have been refused if made, the tender is excused and payment of interest on such sum suspended.

3. WATERS AND WATERCOURSES—ABUTTING PROPERTY—HOMESITES.
   While property abutting a stream runs to the meander line thereof, the area of a homesite from such a tract is not ordinarily computed so as to include land under water.

4. REFORMATION OF INSTRUMENTS—HOMESITE—OVERFLOWED LANDS—EVIDENCE.
   Defendant's claim that portion of land sold plaintiff under land contract for homesite on lots in unrecorded plat of land abutting river had been overflowed when stream was widened was properly disregarded by trial court in suit for reformation of contract, where proofs regarding such land were unsatisfactory both as to facts and extent of land deluged.

5. SAME—ROADWAY TO LANDLOCKED HOMESITE ABUTTING RIVER—EQUITY.
   In suit to reform land contract for sale of landlocked portion of land abutting a river for homesite pursuant to landscape

Excuse of tender by other party's manifestation of unwillingness to perform, see 1 Restatement, Contracts, § 306.

architect's plat that was not recorded, where proposed project to establish a restricted residential community did not otherwise materialize and well-built road used by purchaser would be very damaging to rest of farm if permanently used for such purpose,. defendant's offer to furnish another road together with order to pay a portion of amount necessary to render it usable, action which will require purchaser to expend a like sum, *held*, equitable.

6. APPEAL AND ERROR—MODIFICATION OF DECREE—REMAND.

Upon modification of decree reforming land contract for sale of landlocked homesite acreage from tract of land pursuant to unrecorded plat, in case of disagreement as to exact dimensions of tract and acreage thereof, case is remanded to circuit judge for determination thereof.

7. INTEREST—DECREE—REFORMATION OF LAND CONTRACT—TENDER.

Payment of interest on sum found due in purchaser's suit for reformation of land contract is ordered from date of decree where interest had been suspended at time tender of balance due was excused.

8. COSTS—FAILURE OF EITHER PARTY TO PREVAIL ON APPEAL.

No costs are allowed on appeal in suit to reform a land contract where neither party prevails in Supreme Court.

Appeal from Ingham; Hayden (Charles H.), J. Submitted October 9, 1942. (Docket No. 82, Calendar No. 41,869.) Decided December 23, 1942.

Bill by Harry B. Weinburgh and wife against Jessie E. Saier for reformation of a land contract. Decree for plaintiffs. Defendant appeals. Modified and affirmed.

*Rosenburg, Painter & Navarre,* for plaintiff.

*William C. Brown,* for defendant.

BUTZEL, J. Harry Weinburgh and wife filed a bill of complaint against Jessie E. Saier seeking the reformation of a land contract and such other equitable relief as they might be entitled to. Mrs. Saier was the owner of a farm supposed to contain 113.87

acres at the northwest corner of section 36, Delta township, Eaton county, Michigan. A highway runs north and south on the west section line and on its southerly and easterly sides the farm extends to the Grand River. Prior to the financial depression of 1929, a real estate firm was interested in platting the farm into a number of large parcels for home-sites, and negotiations were had with plaintiff Dr. Weinburgh and others. Owing to the depression, no plat or survey was made. However, in 1931, Dr. Weinburgh entered into negotiations with defendant, and later advised her that he knew one James Greenwood, an architectural designer, who would divide the farm into homesites for a fee of $35. Dr. Weinburgh, after receiving the consent of Ed. Saier, defendant's son, told Greenwood to mark out the homesites and place stakes in each corner. Defendant paid Greenwood for his services. Greenwood drew a plat of the farm land showing various large lots and their dimensions. It also showed the acreage of the respective lots. We have carefully read the testimony, which is more or less in conflict, as to just what was said or done at the time. We find that the judge correctly held that plaintiffs bought lots 7 and 8 according to the Greenwood plat at a price of $500 an acre. The plat and other written evidence, in accordance with which the property was sold, show beyond peradventure that there were 8.1 acres of dry land in lots 7 and 8, and that the price of $4,000, as stated in the land contract, was fixed at the rate of $500 an acre, no extra charge being made for the small fraction in excess of 8 acres. The land contract was drawn by an able and responsible attorney of Lansing, and it was his understanding that the property was being sold at $500 an acre. Five hundred dollars was paid down,

and a note for $500 was executed; the balance was to be payable in semiannual instalments of $150 each, with interest at 6 per cent. per annum. A collateral agreement was also executed providing for easements, grading, building restrictions, and for the organization of a nonprofit corporation which was to enforce the restrictions and conditions. This agreement further provided that purchasers of lots were to contribute $100 per acre toward an improvement fund for the construction of roads and other improvements; that defendant cause the farm to be platted; that the building restrictions, et cetera, all be incorporated into the plat; that defendant should construct 50-foot roads, graveled to a width of 20 feet and including necessary drainage, the construction to be begun when plaintiffs and other purchasers had provided a sufficient sum of money to defray the expense; that plaintiffs were to erect a dwelling on lots 7 and 8 not later than September 30, 1935, costing not less than $10,000.

General business conditions became worse and as no other lots have been sold, nothing has been paid into the improvement fund provided for in the collateral agreement. Plaintiff erected a small house or cottage costing much less than $10,000. Plaintiffs have made other improvements on lots 7 and 8, planted shrubbery, built a power house, installed a sprinkler system, erected a greenhouse, and sheds in addition to the small cottage in which they have lived during the summer. Dr. Weinburgh claimed he built the so-called cottage as a tenant's home, that he uses it in the summer time, that it was built with the consent of defendant, given by her son, and that he had intended later to erect a substantial home. The testimony further shows that defendant intrusted the management of the property to Ed. Saier, her son, who acted as her agent.

Sometime in the summer of 1932 or 1933, plaintiff moved one of the stakes so as to give himself more land. He claims this was done with the consent of Ed. Saier. Apparently the stake was moved 20 feet along one side, thus adding a triangular shaped piece of land, described as "pie shaped." Sometime shortly before this suit was started, plaintiff discovered that even with the land included by moving the stake, there was much less than 8 acres in lots 7 and 8, although he was paying at the rate of $500 an acre for 8 acres.

Upon discovery of the shortage, Dr. Weinburgh went to defendant's home, where, he claims, he told defendant he would settle up on the correct basis, and in turn was told to pay the full amount stated in the contract, or else the contract would be immediately forfeited. Plaintiffs thereupon filed the bill alleging a mutual mistake, asking the contract be reformed as to the purchase price, and that they be given such other equitable relief as they might be entitled to. A change in the area of the acreage was not asked for. We believe lots 7 and 8 can be identified by the Greenwood plat, although it will require a more exact description by metes and bounds to avoid any further controversy.

This case presents mainly questions of fact. The judge held that the contract should be corrected as to the consideration to provide for $500 an acre; that plaintiffs should not be called upon to pay interest after January 1, 1937, as they were willing to pay the entire amount if proper corrections were made, but defendant refused and threatened immediate foreclosure. The judge further held that plaintiffs should receive the extra "pie shaped" piece of property, not covered by the contract, that the collateral agreement should be declared at an end and of no force, inasmuch as none of the other lots were

sold, and further, that the roadway that plaintiffs had been using for ingress and egress should be discontinued, and a different one, in bad condition, and selected by defendant, should be substituted, but that defendant should pay $300 towards the cost of putting the latter road in a usable condition. We agree with the court's conclusions except that plaintiffs are not entitled to purchase more than the only written instrument provided for, viz., lots 7 and 8 of the Greenwood plat. A court may not by decree compel transfer of additional property simply because an agent of the defendant knew that additional property was taken and made no objection. It is elementary that contracts for the sale of real estate must be in writing. *

Appellant argues that plaintiffs should not be excused from the payment of interest after January 1, 1937, as ordered by the circuit judge, because no tender was made, or, if made, was not of the proper amount. The trial court found that tender, if made, would have been refused, and there is ample evidence to support this finding. This being so, tender was excused, and the payment of interest thereafter, suspended.

"The law does not require a useless formality. A formal tender is not necessary where a party has shown by act or word that it would not be accepted, if made." *Mahnk* v. *Blanchard,* 233 App. Div. 555 (253 N. Y. Supp. 307).

For Michigan cases supporting this position, see: *Lacy* v. *Wilson,* 24 Mich. 479; *Fournier* v. *Clutton,* 146 Mich. 298 (7 L. R. A. [N. S.] 179, 117 Am. St. Rep. 638, 10 Ann. Cas. 392); *Hobart* v. *Vanden Bosch,* 256 Mich. 686; *O'Toole & Nedeau Co.* v. *Boel-*

---

* See 3 Comp. Laws 1929, § 13411 (Stat. Ann. § 26.906).—RE-PORTER.

*kins*, 254 Mich. 44. Even if it were here proper to raise the question of insufficiency of tender, formal tender having been found to be excused, defendant could not prevail on that ground.

Defendant claims that as plaintiffs bought lots 7 and 8, that acreage should be computed to the meander line of the stream. The original Greenwood plat showed the dimensions of the lot lines to the water's edge, and a simple computation shows that there would be at least eight acres of dry land if the dimensions given in the plat were correct. While it is true that abutting property runs to the meander line of the stream, it is not customary in figuring the area of lots for homesites also to compute land under water.

Defendant claims that there was some overflowage on the land when the stream was later widened, but the proofs in this regard are so unsatisfactory, both as to the facts and extent, if any, of the land claimed to have been deluged, that the judge evidently disregarded it. We agree with him.

The only other question remaining and that we regard of any importance is whether the judge was correct in substituting a road selected by defendant for one that had been used for a number of years by plaintiffs. Plaintiffs' lots would be landlocked unless means of ingress and egress were provided. They have been using a well-built road. Defendant claims, however, that it would be very damaging to the farm and the rest of her property were such road permanently used. She offered another road which requires considerable repair to make it usable. In order to do equity, the court ordered defendant to pay $300 towards putting the latter road in suitable condition. It also will cost plaintiffs a like amount or more. We believe this is an equitable solution of the question. The judge stated in his opinion

that defendant consented to make such payment, though such consent otherwise does not appear in the record.

Decree will be drawn correcting the contract and ordering plaintiffs to pay the balance due within a reasonably short time, upon receiving proper deed and title to the property; that if the parties are unable to agree upon the exact dimensions of lots 7 and 8 and the acreage thereof, the case will be remanded to the circuit judge for determination thereof. Plaintiff shall pay interest at the rate of 6 per cent. per annum on the amount so found to be due from the date of the decree in this court. As neither party has prevailed in this court, no costs will be allowed.

CHANDLER, C. J., and BOYLES, NORTH, STARR, WIEST, BUSHNELL, and SHARPE, JJ., concurred.