Jack Stakislaw, J.
Petitioner Big Apple Supermarkets, Inc. (hereinafter “ Big Apple ”) moves by order to show cause in this special proceeding, for: (1) the assignment of two mortgages held by respondent Corkdale Realty, Inc. (hereinafter “ Corkdale ”), covering certain real estate which is the subject of a pending foreclosure action; and (2) a stay of proceeding in said action pending a determination of movant’s right to the assignment.
Respondent Corkdale cross-moves for: (1) severance of the special proceeding and the foreclosure action; and (2) an order restraining and enjoining Big Apple from dealing in the subject real property and from further preventing Corkdale from foreclosing and selling same.
Big Apple claims an interest in the mortgaged premises (consisting of a large tract of unimproved land located on the south side of Route 25A in St. James, County of Suffolk) by virtue of a certain agreement of lease (hereinafter “ Agreement ”) dated July 22, 1965, executed by respondent Theodore Bourie as president of respondent Thompson Hill Homes, Inc. (described in the Agreement as “ Lessor ”) and Ardie Zuckerman as president of petitioner Big Apple (described in the *485 Agreement as “Lessee”). Under the Agreement, Thompson Hill Homes, Inc. covenants to construct a shopping center at the subject premises and lease space therein to Big Apple, for use and occupancy of a supermarket, for a term of 21 years, commencing 60 days from the date of delivery of possession and certificate of occupancy, with an option to renew for two successive terms of 10 years each. The Agreement is detailed, consisting of some 14 pages, in addition to: a plot plan of the proposed shopping center (annexed thereto as Exhibit A); 10 pages of building specifications for the proposed construction (annexed thereto as Exhibit B); a rider containing a metes-and-bounds description of the premises; a form letter of acceptance of the leased premises to be signed by the parties following its construction and inspection (annexed thereto as Exhibit C); and a second rider, dated March 25,1966, executed by Big Apple, consenting to pay, in addition to the amount referred to in the body of the Agreement, a certain percentage rent based upon gross annual sales in excess of $3,000,000.
Under the Agreement, construction was to commence not later than April 1, 1966, and delivery of possession of the demised premises was to take place not later than six months thereafter. Construction, however, has not yet begun.
In addition to the subject special proceeding, and the mortgage foreclosure action, there is still a third piece of litigation, involving the same property. In that action, respondents herein, Thompson Hill Homes, Inc. and Mary Ferrara (as owners of the subject premises) seek judgment against Big Apple declaring the July 22, 1965, Agreement invalid, and removing of record the memorandum thereof filed in the office of the County Clerk of Suffolk County on February 23, 1966. Big Apple counterclaims therein for specific performance of the Agreement; compensatory and punitive damages by reason of the owners’ deliberate failure and refusal to proceed with the construction; and an injunction restraining the sale of the premises to another in avoidance of the Agreement or the leasing of same to a competitor of Big Apple. That action is still pending.
Prior to January 28, 1964, the disputed property was owned by respondents Theodore Bourie and Mary Bourie, his wife. They conveyed their title to Thompson Hill Homes, Inc., which was the owner-at the time the Agreement was executed. On August 18, 1966, about the time construction was to have commenced, Thompson Hill Homes, Inc. transferred its title to Mary Ferrara (the maiden name of respondent Mary Bourie), who is the present owner.
*486 The two mortgages, which are the subject of the foreclosure action, predate the execution of the Agreement. They were assigned to Corkdale about the time that respondent Thompson Hill Homes, Inc., had agreed to commence construction under the terms of the Agreement. One mortgage, in the sum of $20,000, was assigned to Corkdale on December 29, 1966, and the other, in the sum of $30,000, was assigned to Corkdale on January 8, 1967. The foreclosure action was commenced on October 30, 1968. It is predicated upon defaults in payments due under the mortgages which occurred in January of 1967. As alleged in the complaint, Big Apple is made a party defendant in the foreclosure action to bar it from any right, title, or interest that it may have in the premises by virtue of the subject Agreement and memorandum thereof filed in the office of the Clerk of the County of Suffolk. Other party defendants to the foreclosure action include Theodore Bourie, Mary Bourie, also known as Mary Ferrara, Thompson Hill Homes, Inc. and others holding or claiming subordinate interests or liens in the mortgaged premises. Only Big Apple served an answer to that coniplaint. No final judgment of foreclosure has yet been granted. But an intermediate order dated May 1, 1969, has been entered, granting foreclosure and sale and appointing Lincoln E. Schmidt, Esq., Referee to ascertain and compute the amount claimed to be due and owing to Corkdale. In view of the stay provided for in the subject order to show cause, the Referee’s report has not yet been filed.
About six months after commencement of the foreclosure action, Big Apple offered to pay Corkdale the principal and interest due on the two mortgages plus costs and disbursements of the action and accept an assignment, without recourse, of the mortgages; and in May of 1969, Big Apple actually tendered, to Corkdale’s attorneys, the sum of $76,680, representing its estimate of the amount due. But the offer and tender were refused. Big Apple now claims to stand ready, willing and able to pay that sum, or any additional sum which this court may find due and owing to Corkdale, in order to obtain the requested assignments and protect such interest as it may have in the disputed property.
In opposition to the instant motion, Corkdale contends: that Big Apple is a stranger to the foreclosure proceeding and has no interest in the equity of redemption; that the Agreement is not in effect; that Big Apple is not a tenant in possession and, therefore, cannot make, nor can Corkdale accept, any tender of payment to obtain an assignment of the mortgages as a matter of law. It is further claimed that the tender was *487 properly refused since it was insufficient in amount; and that Corkdale holds a third mortgage on the premises which is also past due and which will entitle Corkdale, as holder thereof, to participate in the surplus money proceedings. In support of its cross motion, Corkdale contends that the joinder of this special proceeding for an assignment of the mortgages with the foreclosure action is unauthorized and that the stay granted in the subject order to show cause is improper and in violation of the terms of one of the mortgages under foreclosure.
Applications for consolidation and for a stay are addressed to the court’s discretion (Cye, Haberdashers v. Crummins, 142 N. Y. S. 2d 682, affid. 286 App. Div. 1077; Goldey v. Bierman, 201 App. Div. 527; Pollak v. Long Is. Light. Co., 246 App. Div. 765). Independently of statute, the court may consolidate or stay one or more actions pending the determination of another, and if a stay is denied because it would be inexpedient or prejudicial, such denial should not preclude the granting of consolidation (Pollak v. Long Is. Light. Co., supra). Nor should consolidation be denied merely because it involves joinder of an action with a special proceeding (CPLR 103, subd. [b]; Schuster v. 490 West End Corp., 26 A D 2d 535). On the contrary, CPLR 602 grants to the courts wide discretion where, as here, the matters to be joined involve a common question of law or fact. Moreover, the trend is towards a liberal construction of that section in order to simplify practice and expedite justice (2 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 602.01).
Accordingly, regarding the procedural issues here involved, petitioner’s motion shall be deemed to include an application for the consolidation of this special proceeding with the foreclosure action and as such is granted (CPLR 103, subd. [b], 602; Mahnk v. Blanchard, 233 App. Div. 555, 562). The foreclosing mortgagee, however, should not and need not be prejudiced by any further delay in recovering the sum to which it is entitled, as determined on confirmation of the report of the Referee appointed to compute in the foreclosure action.
Regarding the substantive issue, it has been said: “ That a lessee may ordinarily demand the assignment of a prior mortgage would seem to be supported by sound equity and is within authority. (Averill v. Taylor, 8 N. Y. 44; Twombly v. Cassidy, 82 N. Y. 155; Bayles v. Husted, 40 Hun 376 ”.) (Glennon v. Spencer, 163 App. Div. 820, 822.) Indeed, it is not disputed that if Big Apple were a lessee in possession, it would be entitled to the relief requested. Here, however, while the owner of the disputed property is obliged under the Agreement to construct a shopping center on the premises, a specified portion of which *488 is leased to Big Apple, possession is postponed until and remains contingent upon completion of the proposed construction. Certainly, Big Apple cannot be deemed a tenant in possession, since construction has not even begun. But the court, in good conscience, cannot close its eyes to the potential loss which petitioner will sustain in the event the premises are sold to a third party at a foreclosure sale. The petition, therefore, should not be dismissed without first examining the nature and extent of the interest, if any, which Big Apple has. in the premises.
In Averill v. Taylor (8 N. Y. 44, supra) an action brought by the assignee of a lease, for the assignment of a mortgage under foreclosure covering the leased premises, the Court of Appeals affirmed judgment for the plaintiff, entered in the court below based upon the following findings and conclusions of law: (1) that a lease dated March 1, 1949, for 10 years commencing May 1, 1949, is a present demise for the specified term; (2) that the lessee of such a lease is possessed legally and equitably of an estate for such term; (3) that such term is transferable and assignable; (4) that plaintiff, as assignee of such term is entitled to redeem the premises from the foreclosing mortgagee and be subrogated to his rights as mortgagee and to demand and receive an assignment of the bond and mortgage. Although that case is distinguishable from the one at bar (to the extent that, there, the plaintiff was in possession of the demised premises and here, petitioner is not) the principles and rationale applied are relevant. As stated in the majority opinion (8 N. Y., at p. 51): “ The rule is clear, that any one who holds the actual relation of surety for the mortgage-debt, charged upon the land in which he has an interest, although his liability as such surety extends no further than to lo.se his interest in the land, has a right to redeem, for the protection of such interest * * * his right as surety, in such a case, and upon his redeeming, is, to be subrogated to the rights, and to occupy the position, of the creditor from whom he .redeems.” In response to the argument that a tenant for years has no interest in the land but in the term only, the court noted that under the feudal system, the creation of estates for years were looked upon with disfavor, as they were .sometimes the instruments of fraud; thus, under the early common law “ a tenant for years, before entry, was held to have only an interest in the term, and only possession of the term, after entry, and not an interest in the land * * * [but ujnder the common law, aided by occasional statutes, estates for years gradually became valuable, were recognized and protected * * * [taking] their place, *489 under our statutes, as estates in lands * * * [no longer] spoken of as terras, or interests in terms, but ranked as estates in land, and called chattels real * " * [which] may be sold on execution, as real estate * * * and often are, of far greater value than a life-estate ” (8 N. Y., at pp. 51-52). Regarding the mortgagor’s objections, the court said: “A mortgagor who is also a lessor subsequent to his mortgagee, of the mortgaged premises, who fails to protect his lessee by the payment of the mortgage, could not very well object that his lessee should protect himself by redeeming the mortgage. * * * By his lease, the mortgagor made his lessee a surety, in so far as the estate for years in the land granted to, and held by his lessee, stands pledged for the payment of the mortgage-debt; and having, by his solemn contract, placed him in this position of surety, he ought not to be heard to object to his, or his assignee’s exercise of the rights of a surety ” (8 N. Y., at p. 53).
Regarding objections raised by the foreclosing mortgagee, the court reasoned that it should make no difference to him whether he is paid by the mortgagor or by the lessee. “ But if the lessee cannot redeem, he may be very injuriously affected; a sale of the land to the mortgagee, or to a stranger, will destroy his estate for years. To protect himself, he would be obliged to keep himself always in readiness to purchase and pay for the land, when sold upon foreclosure, and obliged to pay the value of the land, discharged of his estate for years. In case of a strict foreclosure, not leaving a right to redeem, he would be without any remedy whatever ” (8 N. Y., at p. 54). In a separate opinion by Taggart, J., the question was raised whether the plaintiffs, who held a lease for only a part, could enforce a redemption of the entire premises without bringing in the persons interested in the residue. But the full court agreed that the redemption should be allowed, as no injury could be done to the absent parties, since the redeeming lessee would merely take the place of the mortgagee.
In this case, petitioner’s interest in the subject realty is not absolute. It is contingent upon the outcome of the pending litigation brought by the owners to declare the Agreement void. Moreover, even if petitioner prevails in that action, its right to possession of the leased premises will be postponed until and be contingent upon completion of the construction referred to in the Agreement. The question, therefore, is whether the contingent nature of petitioner’s interest in the premises or the postponement of its right to possession is necessarily fatal to the requested relief. We think not.
*490 The immediate right to possession of realty gives rise to a present estate. Where the right to possession is postponed to a future period, the interest is referred to as an estate in expectancy or a future estate (Griffin v. Shepard, 124 N. Y. 70, 77). Although the right to possession of realty is postponed and made dependent upon a contingency which may or may not occur, this does not prevent the creation of an estate, but merely renders it liable to be defeated (Griffin v. Shepard, supra). Applying that principle to the case at bar, it would appear that petitioner has such an estate or interest in the subject premises. And so long as that interest exists, the fact of its contingency is, in and of itself, insufficient to bar its right to pay the mortgage debt, plus interest, costs, and disbursements of the foreclosure action an.d be subrogated to the rights of the foreclosing mortgagee (Pease v. Egan, 131 N. Y. 262).
Respondent mortgagee argues that the assignment should be denied because it holds a third mortgage on the premises, given after execution of the Agreement. Under section 275 of the Real Property Law, that circumstance would preclude the owner of the premises from demanding an assignment of the mortgage; but that section “does not abrogate the common law rule as to the right of a junior incumbrancer to make a similar demand for assignment of a senior mortgage” even where the foreclosing mortgagee is also the holder of a subsequent mortgage (Matter of Ryan, 216 App. Div. 619).
The right of subrogation is not dependent upon statute. It is a creature of equity, designed to further justice (Mahnk v. Blanchard, 233 App. Div. 555). Accordingly, where it becomes necessary to protect an interest in mortgaged property, the holder of such interest is usually permitted to pay the mortgage debt and be subrogated to the rights and remedies of the mortgagee (Gerseta Corp. v. Equitable Trust Co. of N. Y., 241 N. Y. 418). Moreover, where, as in this case, the attorneys representing the foreclosing mortgagee refuse to negotiate with or advise the party holding such interest of the amount due, claiming it is not entitled to an assignment of the bond and mortgage even if it pays the mortgage debt, a formal tender is not necessary (Mahnk v. Blanchard, supra). While such right of subrogation will not be decreed in favor of a mere stranger or volunteer (Acer v. Hotchkiss, 97 N. Y. 395, 403) who has no interest to protect or preserve, the interest need not be absolute ; even a contingent interest may be thus protected (Mahnk v. Blanchard, supra).
Respondent mortgagee should not be concerned with the extent or effect of the lease in question. “ Their only interest *491 is to receive all that is coming to them upon the bond and mortgage, and to be reimbursed for the costs of the action. (Mabbett v. Mabbett, 29 App. Div. 609, 611.) [Petitioner] stands ready and willing to pay them every penny they are entitled to. What more can the [mortgagee]ask? It does not matter to them who pays their debt, and if they get their money how are they any worse off by assigning the obligation to the one who pays them? * * * We think [petitioner] has some equity in the property which it can better protect by owning the mortgage [s]. Under such circumstances, if [petitioner] is willing to make the [foreclosing mortgagee] good, and to pay them all that is due on the obligation, and the costs of the action, and run its chances of getting the money hack on the sale of the property, it seems to us that every principle of equity calls for the enforcement of [its] right of subrogation ” (Mahnk v. Blanchard, 233 App. Div., at pp. 560, 561).
Accordingly, the cross motion is denied and the motion granted to the following extent. The Referee appointed herein shall proceed forthwith to prepare, file and serve upon petitioner a copy of his report indicating the amount due to Corkdale as foreclosing mortgagee, including costs and disbursements necessarily incurred by Corkdale to protect its interest in the mortgaged premises during the pendency of the foreclosure action. The order confirming said report shall provide: (1) that petitioner may have 10 days from the date of entry thereof to deliver to said Referee its certified or bank check, made payable to the foreclosing mortgagee, in the amount ascertained to he due, plus any accumulated interest from the date of the filing of the report; (2) that upon receipt of said check, plus payment of the Referee’s fees and any expenses necessarily incurred by the Referee in this proceeding, the Referee shall furnish petitioner with assignments, without recourse, of the bonds and mortgages that are the subject of the foreclosure action, which assignments shall he executed in advance by the foreclosing mortgagee and be held in escrow by the Referee pending his receipt of petitioner’s check and payment of his fees and expenses as aforesaid; and (3) that in the event petitioner fails, within said 10-day period, to comply with the foregoing, the petition shall be deemed dismissed and Corkdale may proceed with its foreclosure and sale of the premises.