## BRUCKER *v.* WELCH.

1. FRAUD—BURDEN OF PROOF.
    The burden is on a party charging fraud to establish it by proof clear and convincing.

2. CANCELLATION OF INSTRUMENTS—DEEDS—FRAUD.
    In a suit for the cancellation of a deed, where defendants, vendees in a land contract, in computing the balance due plaintiff as vendor, deducted $1,000 in addition to the amount plaintiff had agreed to allow them as discount, and plaintiff, who was a woman with little business experience, trusted defendants in making said computation and did not discover what had been done until after she had deeded the premises to them and accepted their check, the decree making it optional with defendants to

accept the discount agreed upon and pay plaintiff the $1,000 or to reconvey the property to her, *held*, just and equitable.

Appeal from Wayne; Cross (Orien S.), J., presiding. Submitted January 23, 1924. (Docket No. 148.) Decided April 10, 1924.

Bill by Lucy Brucker against John M. Welch and others for the cancellation of a deed. From a decree for plaintiff, defendant Welch appeals. Affirmed.

*Henry G. Nicol,* for plaintiff.

*Oxtoby, Robison & Hull,* for appellant.

SHARPE, J. On February 19, 1920, plaintiff became the owner of certain premises in the city of Detroit, subject to a mortgage thereon of $4,000, and subject also to a land contract for the purchase thereof, held by Van Baalen and Gerson. On March 20, 1920, the defendant John M. Welch, appellant, purchased the vendees' interest in this contract. It was dated January 22, 1920. The purchase price was $13,500, of which $5,000 was paid in cash and balance to be paid at the rate of $85 per month, including interest. After the purchases above noted, he made payments to plaintiff as they became due. Prior to January 12, 1921, plaintiff had reduced the mortgage debt to $3,200. At that time the balance due on the contract amounted to $8,033.56. On that day plaintiff called at Welch's office to collect a payment then due, and there met defendant John M. Welch, Jr. She expressed a desire to have the balance of the purchase price paid in cash.. This was induced by the fact that the mortgage was past due and the bank which held it was pressing for payment of the whole or a part of it. On the following day she returned, and the deal was completed by the execution by her of a

deed of the premises to appellant and her acceptance of a check for $2,903.65 in full satisfaction of the amount due her under the contract.   It is her claim that she expressed a willingness to discount the amount due her under the contract 10 per cent., or $800, and that certain items of past-due interest, etc., were added, making in all $932.69; that she expressed surprise when the check was handed to her that the amount was not larger; that she made no computation herself, but relied on the understanding that the discount as agreed upon was to be deducted, and that she supposed that was all that was to be deducted.   A few days later she visited the office of George Dobie, a man engaged in the real estate and loaning business, who acted for the parties from whom plaintiff had purchased the premises.   He had thereafter made payments to plaintiff on the contract before its assignment to defendants.   She explained the deal she had made with defendants to him, and he became satisfied that a mistake in computation had been made.   At his suggestion, plaintiff went to defendants' office and asked John M. Welch, Jr., to let her take the copy of the contract she had surrendered to him.   He declined to do this, but at her request gave her the following memorandum, showing how the amount paid her had been arrived at:

> "Statement—100 High Street East.
> Balance due on principal Jan. 1st, 1921......$8,036.34
> Mortgage due Wayne County Bank............ 3,200.00
> Loss of bonus received when contract was originally purchased ......................... 1,000.00
> By check from John M. Welch ............... 2,903.65
>
> $7,103.65
>
> "Discount allowed ........................$932.69"

Dobie afterwards accompanied her to defendants' office.   He testified:

"I said there appears to be some discrepancy, and so he got—I had paper with me that I copied, of his, and I says there appears to be a discrepancy in the interest in the contract, not much, only four dollars, that is what we started in, $4 or $5.    He said, 'That is all right, we will fix that up.'    I said, 'What discount did you charge Mrs. Brucker, $800?'    He said, '$800.'    I said, 'Some other incidentals there.    I presume that is the correct interest on the mortgage.'    He said, 'Yes, nine hundred and thirty-odd dollars.    That is what made up the $932.'    Then, coming down to the bottom, I said, 'What is this $1,000 taken off for?'    He said, 'That is what Mrs. Brucker made on it when she bought it.'    I said, 'What have you got to do with that?    What does that concern you, no right to take it up.'    He said the deal was all through now, he would not change it, and I said, 'Mr. Welch,' I said, 'Mrs. Brucker is not familiar with dealings of this kind.'    And I says, 'She would not have sold the contract if she knew that was going to be taken off and I would suggest you surrender the contract to her and she will pay all expenses in connection with it.'    I offered them that day at that time.    They would not do it.

"What I asked him, 'What right he had to make such a deduction, referring to the $1,000?'    He said, 'That is what Mrs. Brucker made on it when she bought it.'    I replied, 'What have you got to do with that?'    He did not say anything."

John M. Welch, Jr., testified:

"He wanted to know what I meant by taking $1,000 as a bonus.    I said, 'I had no right whatsoever to take anything or discount any part of the contract.'    'Well,' he said, 'What do you mean by taking this $1,000 off?'    I said, 'That is what Mrs. Brucker told me that she had made when she originally purchased the vendor's interest on the contract.'    He said, 'Well, what have you got to do with it?'    'Well,' I said, 'I have not anything to do with it.'    I said, 'Mrs. Brucker agreed to discount this contract and in computing—making up the statement, in order to make it clear, I simply put "loss of bonus received when contract was originally purchased." '    By bonus, as I have said heretofore,

I meant the difference between what she paid for the contract and the face value of it.

"I think Mr. Dobie then stated if we would return the contract to her, or pay her an additional $1,000 that everything would be satisfactory. That was all that was said and done on that occasion by either myself, Mr. Dobie or Mrs. Brucker."

Plaintiff insists that when she accepted the check for $2,903.65 she had no knowledge that this $1,000 had been deducted, while Mr. Welch testifies that it was there talked over between them, that she had made a profit of $1,000 when she purchased, and she was willing to deduct this as well as the $932.69 as a discount on the sale of her interest in the property. On defendants' refusal to accept the check, and return the deed and contract, plaintiff filed this bill of complaint to secure such relief. The trial court, after hearing the proofs submitted, entered a decree in plaintiff's favor, from which John M. Welch has appealed.

A careful reading of the record satisfies us that the plaintiff relied on the computation made by appellant's son as to the amount to which she was entitled on the sale and that she did not understand that $1,000 was being added to the discount of $932.69 agreed upon. When plaintiff asked for her copy of the contract and was given the memorandum, she did not inform him that she was conferring with Mr. Dobie concerning it. The way in which this sum was referred to in the memorandum lends color to her claim. It was a part of the discount charged her and in fairness to a woman unfamiliar with business transactions, as was plaintiff, should have been so stated. Moreover, the proofs are clear that her profit on her purchase was but $500. The burden is on a party charging fraud to establish it by proof, clear and convincing. We are persuaded that she has sustained that burden.

We have not overlooked the claim made by appel-

lant that plaintiff in her sworn bill of complaint alleges, in substance, that John M. Welch, Jr., informed her that he would deduct the item of $1,000 besides the $932.69 discount. This is, however, followed by the statement that she did not so understand it at that time. That her attorney who prepared the bill did not fully understand the transaction is clearly apparent, not only from her testimony, but from that of Mr. Dobie.

It is no hardship to require a man engaged in the real estate business and familiar with such transactions as were here had, if dealing with persons whom he knows to be without business experience, either to suggest that they secure independent advice or to so conduct the negotiations leading up to the making of a contract that a clear understanding shall be had of the entire transaction. We have no doubt that plaintiff was deceived by the manner in which the $1,000 item was treated. It is clear that she did not understand that she was allowing a discount of nearly $2,000 on an amount yet payable under the contract, over and above the mortgage indebtedness of more than $4,800. No claim is made that the property was not well worth the contract price. Mr. Dobie testified that he could have secured a new loan for plaintiff if he had been requested to do so, notwithstanding the long time for making payments under the contract.

The decree rendered makes it optional with defendants to accept the $932.69 discount and pay plaintiff the $1,000, or to reconvey the property to her, subject to the contract, with due allowances for any change made by them in the mortgage indebtedness. We are persuaded that it was just and equitable. It is affirmed, with costs to appellee.

CLARK, C. J., and McDONALD, BIRD, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.