## FISK *v.* POWELL.

**1. REFORMATION OF INSTRUMENTS—FRAUD—EVIDENCE—MORTGAGE.**

Finding of the trial court in suit to reform purchase-money mortgage, given by daughter and son-in-law to her parents at time of purchase of farm, that contested clause as to date of payment and acceleration clause was in mortgage at time of execution is not disturbed under record presented, where testimony was in conflict and trial court had the advantage of seeing and hearing the witnesses and found that plaintiffs had failed to sustain their burden of proof as to fraudulent insertion of the clause after execution, and it appears that there had been executed a side agreement containing some of the matter of the disputed clause, the evidence of fraud being neither convincing, clear nor satisfactory.

**2. MORTGAGES—CREDITS—NEGLIGENCE—FIRES.**

Credit upon purchase-money mortgage for loss of house on the premises that was destroyed by fire while occupied by defendant mortgagees was properly denied by trial court, where evidence did not justify finding defendants were negligent in building a fire in the stove with a pipe leading to a chimney known to be defective.

**3. SAME—CREDITS—MALICIOUS ATTACHMENT—WHEAT—DAMAGES.**

Trial court's failure to allow as a credit on purchase-money mortgage, the damages plaintiff farm purchasers sustained as a result of an "illegal and malicious attachment without probable cause" of wheat in plaintiffs' storage bins *held*, proper, since,

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 45 Am Jur, Reformation of Instruments § 57 *et seq.*
[4] 5 Am Jur, Attachment and Garnishment §§ 984, 986.
[4] Necessity and sufficiency of allegations in complaint for malicious prosecution or tort action analogous thereto that defendant or defendants acted without probable cause. 14 ALR2d 264.
[5] 5 Am Jur, Attachment and Garnishment § 998.
[6] 14 Am Jur, Covenants, Conditions and Restrictions § 99 *et seq.*
[7] 45 Am Jur, Reformation of Instruments §§ 120–124.

under the evidence presented, damages for partial crop failure due to late planting of the wheat, damages to the wheat from the attachment and attorney fees incurred in attempting to secure a dissolution of the attachment were too remote, speculative and contingent and did not result directly from the injury.

4. ATTACHMENT—MALICE—PROBABLE CAUSE.

An action for malicious attachment is based upon an actual seizure of the property under process, issued without probable cause and prosecuted with malice.

5. SAME—MALICE—MORTGAGES—EVIDENCE—ADVICE OF COUNSEL.

Mortgagees who were to get a third of each year's crops of farm toward payment of principal of purchase-money mortgage and who had not received all of their share in year previous to suing out writ of attachment on wheat may not be said to have taken such action because of malice or to have lacked probable cause, where they were again apprehensive they would not be paid and acted upon the advice of attorneys.

6. DEEDS—BREACH OF COVENANT AGAINST INCUMBRANCES—DAMAGES —INTEREST—TENDER OF PAYMENTS ON MORTGAGE.

Outstanding recorded bank mortgage against premises defendants sold to their daughter and son-in-law which was not excepted in warranty deed to plaintiffs constituted a breach of the covenant against incumbrances upon conveyance to plaintiffs, but such breach did not excuse plaintiff mortgagors from making tender of principal payments required by their mortgage nor stop interest and entitled plaintiffs to nominal damages only in the absence of a showing of actual damages as a result of defendants' breach of such covenant.

7. MORTGAGES—REFORMATION OF INSTRUMENTS—ACCOUNTING—OUTSTANDING MORTGAGE AGAINST MORTGAGEES.

Decree in suit by mortgagors against mortgagees for reformation of mortgage and settlement of all matters arising out of transaction, involving sale and purchase-money mortgage on a farm, whereby principal balance due with interest after allowance of credits was found and plaintiffs ordered to pay to clerk of court a sum certain to liquidate an outstanding bank mortgage against the premises *held*, proper.

Appeal from Newaygo; Pugsley (Earl C.), J. Submitted April 2, 1957. (Docket No. 10, Calendar No. 46,695.) Decided September 4, 1957.

Bill by Merle Fisk and Leta Frances Fisk against J. Hughes Powell, Esther V. Powell and First State Bank of Newaygo for reformation of deed and mortgage and determination of rights in farm property. Decree granting plaintiffs partial relief. Plaintiffs appeal. Affirmed.

*Livingston & Anderson,* for plaintiffs.

*Reber & Reber,* for defendants.

SMITH, J. This action relates to the purchase of a farm in Ottawa county. The plaintiffs, vendees, are daughter and son-in-law; the defendants, vendors, are mother and father. The actual sale of the property was made in 1949. In December, 1948, the defendant Powell had had drawn up the papers for the consummation of the transaction. They were executed on January 6, 1949. They consisted of a warranty deed from the defendants to the plaintiffs; a mortgage from the plaintiffs to the defendants securing the sum of $11,000 and the assumption of a mortgage originally given by the defendants to the Central Bank, Grand Rapids, in the amount of $9,000; a "side agreement" which allowed the defendants to retain possession of the premises for 1 year, and according to the terms of which the plaintiffs agreed to pay "one-third of proceeds from the sale of all crops or produce from said farm, to apply on the principal balance of the $11,000 mortgage;" and finally, a promissory note in the amount of $11,-000, payable in 10 years.

Following the sale, the defendants remained in possession and occupancy of the farm buildings for several weeks, at the end of which time the house was almost totally destroyed by fire. Defendants then moved in with the children. As for the insurance moneys, the house had been insured for $1,500.

The insurance company paid total loss to the Central Bank, to be applied to the mortgage assumed by plaintiffs. Difficulties soon arose over the "one-third" payments allegedly due. From 4 planting and harvesting seasons the plaintiffs received $22,-683.90 in proceeds from the sale of wheat and oats from the farm, which they had continued to work after the fire. (Following 1952, however, plaintiffs used the land for pasturage.) From these proceeds the plaintiffs have paid to or for the defendants relatively small sums: $1,500 in 1 payment; a note owing by the defendants for $250; and taxes for the year 1948 of $130.50. They have, also, a receipt from the defendants for lumber sold by the defendants from the destroyed house in the amount of $250. For these sums the plaintiffs were given credit on the mortgage by the chancellor. During this same period the plaintiffs completely paid off the Central Bank mortgage of $9,000 and have paid interest on the $11,000 indebtedness to January, 1953. Defendant Powell's answer asserts that "plaintiffs owe to the defendants Powell, on said purchase-money mortgage, a principal sum in excess of $9,000 plus interest." In this connection we also note that in January, 1949, there was on record a mortgage given by the defendants to the First State Bank of Newaygo in the amount of $4,000. The bank is a party to this litigation. It was as a result of the claimed refusal on the part of defendants to do anything about having this mortgage discharged that the plaintiffs refused to pay any further amount due on the principal mortgage. When the plaintiffs refused so to pay, defendant Powell, on September 13, 1950, sued out a writ of attachment, which, however, was voluntarily discontinued on September 28, 1950, for reasons which are in controversy. The goods attached consisted of wheat in bins on the Ottawa county farm. This outline of facts will be

expanded as necessary in connection with specific questions ruled upon.

In the action before us, then, we have daughter and son-in-law arrayed against father and mother with respect to facts even now, after trial and decree, hotly contested before this Court. The plaintiffs sought a declaratory judgment, reformation of the deed and mortgage in 2 respects, an accounting between the parties, and, generally, "a determination of the status of the title to the farm" and the obligation of the plaintiffs. From a decree resolving the controversy the plaintiffs take a general appeal.

As noted, the plaintiffs seek first reformation of the instruments of purchase and sale in 2 respects. First, that the following words in the warranty deed be struck: "First parties reserve 1/2 of all oil and mineral rights." This the chancellor resolved in favor of the plaintiffs and ordered it stricken from the deed. No question concerning it is raised on appeal. Secondly, plaintiffs alleged that the defendants Powell "fraudulently" inserted the following paragraph in the mortgage executed by the parties before it was recorded:

"It is especially agreed that 1/3 of all crops raised on said premises shall be paid on the note secured by this mortgage within 30 days from harvest date. Upon failure to do so the balance of said note shall become due and payable. Mortgagors agree to farm the land every year and to use good farming practice."

The side agreement, one of the very few incidents in this case as to which there is not a square giving of the lie, was executed the same day between the parties. It provides as follows:

"We further agree to pay to J. Hughes Powell and Esther V. Powell 1/3 of proceeds from the sale

of all crops or produce from said farm, to apply on the principal balance of the $11,000 mortgage."

The defendant Powell testified that the papers were prepared by an attorney (now dead), who drafted all except the side agreement. (This the defendant himself had dictated to the secretary.) When the attorney saw the contents of the side agreement, we are told, he advised defendant Powell that the contested paragraph should be included in the mortgage in order to protect the defendants. The attorney, according to the defendant's testimony, then, himself, on his own typewriter, inserted the now-contested clause in 2 of the copies of the mortgage. However, the defendant admits that "it (the mortgage) doesn't use the same language" as the side agreement, the principal difference being the words providing for the time for payment and acceleration in default thereof.

The plaintiffs testified that they had all copies of the mortgage in their possession for 3 or 4 days before their execution. They say they read them over but found no provision therein similar to that quoted above. They retained possession of the papers until the day arrived for closing the transaction. At this time the defendants were given the documents and the parties left together for the office in Rockford where they were executed. No additions were there made except the typewritten names of the witnesses. Plaintiffs testified that the documents were the same then as they had been at home.

Upon these facts the chancellor found that the mortgage as executed on January 6, 1949, did contain the contested clause. With this we can find no fault. In reviewing this record, as in other chancery appeals, we are bound, in the words of Mr. Justice CAMPBELL long ago (*Haines* v. *Haines,* 35 Mich 138, 143) to "render such respect to the views of the in-

ferior tribunal as not to disturb its orders without being satisfied of their requiring correction." We are mindful, also, that the trial chancellor had the advantage of seeing and hearing the witnesses. Regarding the allegedly fraudulent insertion in the mortgage, the essential claim of the plaintiffs is that the defendants inserted the contested clause after execution. However, in view of the admitted side agreement the only change was to make certain the date of payment (to be "within 30 days from harvest date,") and for acceleration of the balance upon failure to so pay. The chancellor ruled as follows:

"I believe further that the duty is upon the plaintiff to establish the claim of fraud here made that there was no acceleration clause in the original mortgage and I am not willing to find from the proofs here submitted that this language was not in the mortgage at the time the same was executed. It is a case of balancing the testimony of the plaintiff against that of the defendant and something stronger than a mere preponderance of the evidence is necessary to establish fraud."

We are of the opinion that the chancellor was correct. The evidence of fraud adduced by the plaintiffs was neither "convincing, clear nor satisfactory." *Brucker* v. *Welch,* 226 Mich 535; *Gardner* v. *Gardner,* 311 Mich 615; *Grimshaw* v. *Aske,* 332 Mich 146; *Broaden* v. *Doncea,* 340 Mich 564.

The second question raised by the plaintiffs relates to imposition of the loss sustained when the farmhouse was destroyed by fire. Plaintiffs sought to charge the loss against the mortgage given to the defendants. It appears from the record that although the house had a furnace in the basement capable of heating the entire house of 12 rooms the defendants, while in possession under the side agreement, continued to heat the structure by means of

2 small stoves of the sheet iron variety. These had been installed during the September previous to the sale of the farm and were used to heat the 2 rooms in which they stood in the east portion of the building; a third room, a bedroom, was used but not heated. The remainder of the house was used for storage. Plaintiffs attempted to show that the fire started at the thimble (of the stove in the kitchen) which assertedly extended through the partition wall of the kitchen into the chimney in the adjoining room, and that such start was attributable to the negligence of the defendants. It was said that these stoves were dangerous, that they were installed without inspection or investigation of the chimney and accessories, and that the defendants were on notice that the stoves were defective, since the stoves had, on previous occasions of use, smoked so excessively that the occupants were driven from the house until it cleared.

Here again the testimony resolves into a seemingly irreconcilable conflict. Although plaintiffs assert the foregoing, the defendants deny all essential elements. Thus the father, Powell, testified that plaintiff Fisk had helped install the stoves and that there was never an excessive amount of smoke from the stove, never more than would come normally from starting a fire. To this Fisk replies, "I had no part in helping Mr. Powell install these stoves" and asserts that on several occasions "the house was full of smoke." The chancellor concluded as follows:

"If there was any liability against the defendants Powell which inures to the benefit of the plaintiff, it must be upon the theory that there was negligence on the part of the defendants in the building of a fire in the stove with a chimney or thimble leading into the chimney known to be defective. The proofs in this case will not justify any finding of negligence on this theory and this claim is disallowed."

Examination of the record fails to disclose any basis for imposing liability upon the defendants for loss from the fire, save the testimony of the plaintiffs that the stoves smoked excessively, contradicted by defendants, and inconclusive evidence respecting a defect in the thimble hereinbefore described. These issues were resolved against the plaintiffs.* We feel constrained to observe that the record amply supports the chancellor's conclusion.

Plaintiffs' third claim of error is that the chancellor failed to allow as a credit against the mortgage the damages sustained by the plaintiffs as a result of the "illegal and malicious attachment without probable cause" of wheat in plaintiffs' storage bins. This had occurred 4 years prior to the filing of the bill of complaint. The testimony established that plaintiffs had received, in the year 1949, $7,908.-90 for their wheat. They had, however, paid only $1,500 on the mortgage. The 1950 crop was harvested in July (their crop return for that year amounted to $7,985.50). Defendant Powell testified that he was fearful the crop would again be sold and that he would see little, if any, of the proceeds, despite his agreement for 1/3 thereof. Consequently he consulted counsel in September and attachment was had. It was discontinued in a couple of weeks. Defendants say the discontinuance resulted from family pressure (the other children were upset about a family lawsuit). Plaintiffs, on the other hand, assert that this explanation is simply "another outright lie," that the suit was conceived in spite and malice and discontinued when it had served its

---

* Plaintiffs also argue that the legal title was never vested in them because the warranty deed of January 6, 1949, recorded the following day, was allegedly not received by them until July, 1949; therefore, since both possession and legal title were retained by the defendants they should bear the loss. See, also, CL 1948, § 565.701 (Stat Ann 1953 Rev § 26.676[1]). This argument was so palpably without merit it did not merit discussion.

purpose of tying up their wheat at planting time. ("I had to get the wheat out of the bin in order to sow it.") As a result of the attachment, plaintiffs claimed damages in the amount of $3,130 for a partial crop failure due to the late planting of the wheat, damage to the wheat from the attachment, and for attorney's fees incurred in attempting to secure a dissolution of the writ. The damages thus alleged to have been caused by the attachment to the succeeding crop, however, are not only remote, speculative and contingent, but are not within the rule laid down in *Woodyard* v. *Barnett,* 335 Mich 352. Such damages must result directly from the injury and be the legal and natural consequence of the injury.

It is far from clear that such was here the case. Although it is asserted that plaintiffs got their wheat in late because they could not "use the wheat that was tied up in the attachment suit," it was also asserted that they did not "go ahead and sow the wheat" because they had heard "rumors" that defendants were going to retake the farm. Plaintiff Fisk finally attributed his delay in preparing the ground to the fact that defendant Powell had "been playing around over there," and "bothering" him which had "irritated" him. We thus cannot hold that the damages suffered were the legal and natural consequence of the attachment and the chancellor was correct in holding that the damages claimed "are not proper items under the proofs" to be considered.

We should not be taken as holding, however, that the attachment suit was in law malicious. An action for malicious attachment is based upon an actual seizure of the property under process, issued without probable cause and prosecuted with malice. *Brand* v. *Hinchman,* 68 Mich 590 (13 Am St Rep

362). Plaintiffs' testimony as to malice and lack of probable cause is far from convincing. Defendant Powell was, it is true, angry with plaintiffs because of their refusal to pay. Defendants had not received their full share of the proceeds from the previous year's crops and apprehended that the same would occur the current year. "There was," as the chancellor observed, "a matter in controversy between the parties at that time concerning the amount that was due upon the mortgage." Defendant Powell thereupon went to his attorneys and placed the matter in their hands, leaving it "strictly up to the attorneys." See *Kompass* v. *Light,* 122 Mich 86. We are not convinced of the existence of malice and the lack of probable cause.

The fourth point urged by plaintiffs on appeal is that "formal tender of crop payment and of interest payment were excused by repeated defaults and breaches of covenant by defendant Powell, and such defaults and breaches of covenant stopped the running of interest." This claim involves the $4,000 mortgage (recorded on March 1, 1948) outstanding in favor of the Newaygo Bank at the time of the conveyance of the property in question on January 6, 1949. Defendants assert that the plaintiffs knew of this mortgage. Plaintiffs, on the other hand, insist not, and assert that this mortgage constitutes a breach of the covenant against incumbrances in the deed executed by defendants. The plaintiffs ultimately refused further to make payments on their mortgage to the defendants until the latter would "clear up" the debt claimed owing to the Newaygo Bank. It was, plaintiffs claim, upon this understanding that the $1,500 was paid, and they here maintain that since this was not done they were excused from making any formal tender of principal payments and, therefore, further interest was barred.

In their words, "We also maintain that the default and breaches of covenants by Powell as a matter of law stopped the running of interest until Powell complied with his covenants." The chancellor disallowed this claim, and properly so. The covenant against incumbrances was breached, upon these facts, immediately upon the conveyance in 1949. Plaintiffs' knowledge, or lack of knowledge, of the existence of the mortgage is of no moment. See *Edwards* v. *Clark*, 83 Mich 246 (10 LRA 659); 8 MLP, Covenants, § 14, and cases there cited. However, the plaintiffs are limited to only nominal damages in the absence of any showing of actual damages. *Marsh* v. *Tunis' Estate*, 39 Mich 100; *Hartman* v. *Stoll*, 205 Mich 378; *Barsky* v. *Katz*, 241 Mich 63. They did not here show any actual damages sustained as a result of the breach of the covenant. Plaintiffs were never disturbed in their possession due to this outstanding mortgage or anyone's attempting to enforce it. Finally, the breach of this covenant was no justification, as plaintiffs would have us rule, for total failure by them to perform under their agreements.

Questions raised by the plaintiffs concerning the extent of the relief granted to the defendants are without merit. The plaintiffs, as their pleadings indicate, sought the aid of the chancellor to settle all matters arising out of this transaction, with all interested parties before the court. They may not now complain that the chancellor, having full jurisdiction, did just that. His decree that the $8,869.50 principal balance on the mortgage, with interest, due, after allowing the plaintiffs credits for the various items listed, is affirmed as proper. The remainder of the decree, including the provision that the plaintiffs pay $5,500 of this amount to the clerk of the court to provide for the Bank of Newaygo's mortgage for

which a release will be received by the plaintiffs, is also without error.

Decree affirmed, costs to appellees.

DETHMERS, C. J., and SHARPE, EDWARDS, VOELKER, KELLY, CARR, and BLACK, JJ., concurred.