## MICHAELS v MELLISH

1. VENDOR AND PURCHASER—LAND CONTRACTS—REPUDIATION—INTEREST.

   A seller's repudiation of a contract for the sale of land stops the running of interest under the contract as of the date the repudiation was communicated to the purchaser, and the seller is not entitled to interest from that date until the date on which the existence and validity of the contract were acknowledged by the seller.

2. VENDOR AND PURCHASER—LAND CONTRACTS—INSTALLMENTS—INTEREST.

   The "whole amount due" on an installment land contract, necessary to be tendered to stop the running of interest when the tender was refused, was the amount due at the termination of the period at which an individual and separate installment was due, not the entire balance, where before the installment became due the vendor wrongfully repudiated the contract, and where before the repudiation the purchaser had paid installments properly.

3. VENDOR AND PURCHASER—LAND CONTRACTS—TENDER.

   A formal tender under a land contract is not necessary where a party has shown by act or deed that it would not be accepted if it were made.

4. INTEREST—DEBTS—CREDITORS—PREVENTION OF PAYMENT.

   The accrual of interest on an obligation is suspended where a debtor is willing and ready to make payment but is prevented from doing so by the act or omission of his creditor.

5. VENDOR AND PURCHASER—LAND CONTRACTS—REPUDIATION—INTEREST.

   Interest need not be paid for the time a repudiation of a land

REFERENCES FOR POINTS IN HEADNOTES

[1, 5] 55 Am Jur, Vendor and Purchaser § 617.
   45 Am Jur 2d, Interest and Usury § 348.
[2] 55 Am Jur, Vendor and Purchaser § 350.
[3] 55 Am Jur, Vendor and Purchaser § 343.
[4] 45 Am Jur 2d, Interest and Usury §§ 87, 93.

contract was in effect where the land contract purchaser was willing and ready to make payment of an obligation and was prevented from doing so by the wrongful act of the seller who repudiated the contract.

Appeal from Gogebic, William F. Hood, J. Submitted Division 3 June 3, 1974, at Grand Rapids. (Docket No. 16515.) Decided September 10, 1974.

Complaint by Richard C. Michaels, Russell Nelson and Tena Nelson against Frederick E. Mellish and Barbara Mellish for foreclosure of a land contract. Amended complaint by plaintiffs for reformation of the contract, and complaint for foreclosure withdrawn. Reformation denied. Plaintiffs appeal. Affirmed.

*Allen R. Briggs,* for plaintiffs.

*William G. Cloon, Jr.,* for defendants.

Before: HOLBROOK, P. J., and T. M. BURNS and R. L. SMITH,* JJ.

HOLBROOK, P. J. The facts of this case are adequately set forth in the following excerpts from the trial court's fine and detailed opinion.

"1. On the 15th day of August, 1970, the parties signed a written contract for the sale by plaintiffs and the purchase by defendants of the property known as Royal Motel, situate in the City of Ironwood, Gogebic County. This contract was made on a Doubleday-Hunt-Dolan Company form #15. It described the real estate involved as the East 360 feet of the West 40 rods of the North 40 rods of Lot Two of the Northwest Quarter of the Northeast Quarter of Section 21, Town 47 North, Range 47 West, City of Ironwood, Gogebic County,

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Michigan. No specific mention was made in the contract of the motel furniture, furnishings, and equipment, but all parties assumed and intended that such items were included with the real estate as a package transaction. The contract provided for a total purchase price of $150,000.00, reciting a down payment of $27,000.00 with the unpaid balance to bear interest at the rate of 8% per annum and to be paid in monthly installments of $1,000.00 on the principal plus interest on the 15th day of each month commencing September 1970. Such contract provided that in the event the defendants desired to re-sell the property covered by the contract the plaintiffs were to have the first right of purchase. The land covered by the contract was part of a 40 rod square parcel owned, subject to a highway right of way, by one or more of the plaintiffs; and said contract further provided that if the plaintiffs should desire to sell any remaining part of said 40 rod square parcel, the defendants were to have the first right of purchase of the same. The precise wording of the option provision of the contract is not now known by any of the parties nor by the scrivener.

"2. The contract was prepared by Attorney Robert A. Burns on instructions by the plaintiffs. He acted solely as attorney for the plaintiffs and had no contact whatever with the defendants until some weeks after the contract had been executed. Said attorney was instructed by plaintiff Michaels to prepare the contract to cover the East Half of the 40 rod parcel. Both Mr. Michaels and Mr. Burns assumed this meant the width of the property would be one-half of 40 rods. Mr. Burns computed this width to be 330 feet, but through his error in typing, the description appeared in the contract as the East 360 feet of said 40 rod parcel. The entire contract including the description with the 360 foot dimension was read aloud by Mr. Michaels in the presence of all the parties, and then executed by all the parties without change.

"3. In the preliminary discussions of the parties, mention was made that the real estate would comprise one-half of the entire parcel, which was assumed to be ten acres. At that time no survey was available and neither party was aware of the precise location of the

center line of the tract. Two separate surveys made in December 1971 show that if the width of the motel property is established at 330 feet, the west line will be eight and a fraction feet west of the west wall of the motel. At the time of the preliminary discussions, the grass by the motel was being mowed to a point more than 40 feet west of the motel building. Defendants assumed the motel property extended to the point where the grass was mowed. A space substantially greater than eight feet in width to the west of the motel is reasonably needed for the operation of the motel, not only to provide space for vehicle access to the rear of the motel via the west side, but more importantly in the wintertime to provide a storage space for snow cleared from the front of the motel's westerly units. The survey map submitted by plaintiffs shows that because of a curve in the highway which crosses the northerly part of the 40 rod tract, the distance between said highway and the south boundary of the tract is only 535 feet along the east line, and 599.4 feet along the west line. This means that if such tract is divided in half according to usable area, the 330 feet line would not be a proper division; the east half should be wider than 330 feet.

\* \* \*

"5. The September, October, and November 1970 payments, each in the amount of $1,000.00 plus interest, were paid by the defendants on or before the respective due dates, reducing the unpaid balance to $120,000.00 on November 15th with interest paid to that date.

"6. Some time in October or November, 1970, plaintiff Tena Nelson came to the motel and obtained defendants' copy of the contract from defendant Barbara Mellish on the pretext that there was an error in describing the state highway property which adjoined. Plaintiff Tena Nelson then asked Attorney Burns to prepare a new contract form to alter the width of the property description from 360 feet to 330 feet, and also to delete the name of Richard C. Michaels as a seller. This request was made despite the fact that record title to the property was at that time and still is in plaintiff

Richard C. Michaels, and no request was made to Mr. Burns to prepare a deed from Richard C. Michaels to the Nelsons. Plaintiff Tena Nelson never submitted the new form of contract to defendants for execution nor did she return the old contract to defendants, despite defendants' demands for return of same. Instead, plaintiff Tena Nelson intentionally destroyed both copies of the old signed contract and the new unsigned one. Plaintiff Tena Nelson informed the defendants that a mistake had been made in the 'appraisal' of the motel property and that if they still desired to purchase the same they would have to enter into a new contract at a $25,000 increase in price, with the monthly payments increased to $2,000.00 plus interest.

"7. Under date of November 30, 1970, plaintiff Richard C. Michaels wrote a letter to defendants in which he stated that 'in view of your accusations against me * * * ' he was declaring the land contract void as of that date for the reasons that defendants had failed to carry liability insurance on the premises and failed to keep buildings and premises 'in the excellent condition as they were when you moved in'. The letter requested that the defendants vacate the premises immediately. On or before December 10, 1970, plaintiff Michaels engaged a new attorney, Mr. Wisti, who on that date wrote to attorney William G. Cloon, Jr., who had just recently been retained by defendants. Mr. Wisti's letter stated that he had been retained by Mr. Michaels 'in regard to a breach of land contract'; that he understood there was another payment due on December 15th, and he had advised Mr. Michaels not to accept the payment as the contract had been breached. On December 15, 1970, defendants tendered the installment of principal and interest due on that date. The tender was rejected by plaintiffs. On January 20, 1971, plaintiffs filed this suit claiming the contract had been forfeited and breached and should be foreclosed. This position of the plaintiffs persisted until the pre-trial conference held on January 21, 1972, at which time plaintiffs, with new counsel, filed an amended complaint in which plaintiffs abandoned all claim for forfeiture of the contract. The only relief requested by the amended complaint was a reformation of the contract to provide for 330 feet of

frontage rather than 360 feet; determination of the wording of the reciprocal options or right of first refusal; determination of the defendants' pro rata share of the taxes paid by the plaintiffs, and determination of the amount due on the contract. In the meantime, defendants had filed a counter claim requesting approximately the same relief except for the reformation, and also requesting damages to compensate for the failure of the plaintiffs to fulfill their obligations under the contract. Defendants have denied that plaintiffs were entitled to reformation; and in the alternative claimed defendants were entitled to reformation of the width of the description to give them sufficient property to permit the proper running of the motel."

The trial court concluded that plaintiffs had not sustained their burden of proving mutual mistake. The court found a further reason that reformation should be denied, *viz.,* unclean hands. Thereafter the court stated, which is pertinent to this appeal, the following:

"13. The repudiation of the contract communicated to defendants by plaintiff Michaels' letter of November 30, 1970 stopped the running of interest as of that date and plaintiffs are not entitled to interest from that date until January 21, 1972, the date on which the existence and validity of the contract were acknowledged.

"14. The unpaid balance on the contract now stands in the amount of $120,000.00 on the principal plus simple interest on that sum for the periods from November 15, 1970 to November 30, 1970, and from January 21, 1972 to date."

Subsequently, plaintiffs filed a motion for alteration or amendment of the judgment. In a written opinion, the trial court denied this motion and said:

"Plaintiffs' motion is based upon the claim that the court erred in deciding that plaintiffs are not entitled to interest on the contract for the period from November

30, 1970 to January 21, 1972. The former date is the date of plaintiff Michaels' letter to the defendants' declaring the contract void and forfeited and requesting defendants' immediate removal from the premises; and the latter date is the date of the pretrial conference and of the filing of an amended complaint wherein all claim for forfeiture or foreclosure of the contract was withdrawn."

In support of its determination, the court cited the case of *Marion v Detroit,* 284 Mich 476; 280 NW 26 (1938).

Plaintiffs have here appealed asserting that the trial court erred in determining that no interest should be paid from November 30, 1970, until January 21, 1972.

As this is an action in equity, we review the case *de novo,* but we give considerable weight to the findings of the trial judge. We do not ordinarily disturb the trial judge's findings unless after an examination of the entire record we conclude that we would have been required to have reached a different result had we been sitting as the trial chancellor. See *In re Hartman Estate,* 51 Mich App 192; 215 NW2d 202 (1974). We do not find that we would have been required to have reached a different result had we been sitting as trial chancellor.

Plaintiffs have asserted in this appeal that: "It is the universal rule that the amount tendered must be sufficient to include the whole amount due from the debtor, in order for a lawful, bona fide tender of the amount due to stop the accrual of further interest". At the outset, we find that the whole amount due, upon this installment land contract, was the amount due at the termination of the period at which the individual and separate installment was due, with accrual of the interest

thereupon. See 1 CJS, Actions, § 124e, p 1388 and 54 CJS, Limitations of Actions, § 156, p 97. *Cf.* 14 Michigan Law & Practice, Interest, § 11, p 452; and, *Harris v Axline,* 323 Mich 585, 590; 36 NW2d 154,‒ 156 (1949).

By letter dated November 30, 1970, plaintiff Richard C. Michaels wrote the defendants the following:

"Dear Mr & Mrs Mellish:
"I have gone against all odds in giving you every chance there is in our business transaction. I have helped you in every way possible in making your move to Ironwood a pleasant one. I even stood to loose *[sic]* as your investment was so small and have helped teach you the motel business, infact *[sic]* working there salary free to help you. What else can I do . . . ?

"In view of your accusations against me, *I am declaring the Land Contract,* as of this date, November 30, 1970, *void and forfeited* for the following reasons:

"1 —You have failed to keep the buildings on said premises, namely the Royal Motel. *[sic]* properly insured. You have failed to carry Liability insurance on said premises. I have brought this to your attention many times and you have promised to take care of this but never have.

"2 —You have failed to keep said buildings and premises in the excellent condition as they were when you moved in. . . . this I have brought to your attention many times.

"I therefore request that you vacate the premises, the Royal Motel, immdialely *[sic]*." (Emphasis supplied.)

Further, on December 10, 1970, plaintiffs' then attorney wrote defendants' attorney as follows:

"Dear Mr. Cloon:
"Please be advised that I have been retained by Mr. Michaels in *regard to the breach of land contract* and I do understand that you represent the other party involved in this matter.

"I intend to be in Ironwood next week and will discuss the matter with you and I will also discuss the matter further with Mr. Michaels.

"I understand that there is another payment due under the land contract on December 15, and *I have advised Mr. Michaels not to accept the payment as the contract has been breached as of this date.*" (Emphasis supplied.)

Thus, it can readily be seen that plaintiffs had informed defendants that they found them to be in breach of contract and that as such, they had forfeited their rights thereunder; and, further, any tender of installments due and forthcoming would not be accepted.

*Weinburgh v Saier,* 303 Mich 640, 645; 6 NW2d 921, 923 (1942), was a suit for reformation of a land contract. That contract provided for payments to be made in installments. The Court wrote:

"Appellant argues that plaintiffs should not be excused from the payment of interest after January 1, 1937, as ordered by the circuit judge, because no tender was made, or, if made, was not of the proper amount. The trial court found that tender, if made, would have been refused, and there is ample evidence to support this finding. This being so, tender was excused, and the payment of interest thereafter, suspended.

" 'The law does not require a useless formality. A formal tender is not necessary where a party has shown by act or word that it would not be accepted, if made.' *Mahnk v Blanchard,* 233 App Div 555; 253 NYS 307 (1931)."

See also *Keller v Paulos Land Co,* 5 Mich App 246, 255; 146 NW2d 93, 98 (1966), *aff'd,* 381 Mich 355; 161 NW2d 569 (1968); *Rothenberg v Follman,* 19 Mich App 383, 390; 172 NW2d 845, 849 (1969); and *Swain v Kayko,* 44 Mich App 496, 501; 205 NW2d 621, 624 (1973).

Where a debtor is willing and ready to make payment of an obligation but is prevented from doing so by the act or omission of his creditor, the accrual of the interest on the obligation is suspended. 45 Am Jur 2d, Interest and Usury, § 102, p 90. See also 47 CJS, Interest, § 50, pp 61–62; and 33 CJ, Interest, § 139, p 239. We find here the trial court to have been correct in determining that the repudiation of the contract by the plaintiffs was an unconscionable act and, thus, the defendants were prevented from making tender of payment by a wrongful act of plaintiffs. *Cf. Wilcox v Commonwealth Realty & Trust Co,* 248 Mich 527, 530–531; 227 NW 678, 680 (1929).

We find the trial court to have been correct in its determination that interest was not to be paid throughout the stated period. The court correctly found that the plaintiffs' repudiation of the contract was improper and, therefore, interest should not be paid for the stated period.

Affirmed. Costs to defendants.

All concurred.