In re COUNTRY WORLD CASINOS, INC., Debtor.

COUNTRY WORLD CASINOS, INC., Appellant,

v.

TOMMYKNOCKER CASINO CORP., Appellee.

No. CIV. A. 96–M–2823.
Bankruptcy No. 95–20563RJB.

United States District Court, D. Colorado.

Aug. 5, 1998.

Arthur Lindquist–Kleissler, Denver, CO, for appellant.

Michael Romero, Pendleton, Friedberg, Wilson & Hennessey, Denver, CO, for appellee.

## MEMORANDUM OPINION AND ORDER

MATSCH, Chief Judge.

This is an appeal under 28 U.S.C. § 158(a) by the Debtor, Country World Casinos, Inc. ("Country World") from a bankruptcy judge's order for payment of the secured claim of Tommyknocker Casino Corp. ("Tommyknocker") and denial of the Debtor's claim of offset in a Chapter 11 proceeding in the Bankruptcy Court. Tommyknocker filed a cross-appeal for the failure of the bankruptcy judge to award default interest plus costs of collection and attorneys' fees. Tommyknocker also asserts error by the bankruptcy judge in including speculation about one of its principals in the memorandum opinion and order of November 5, 1996, published as *In re Country World Casinos, Inc.*, 202 B.R. 500

(Bankr.D.Colo.1996). The bankruptcy judge entered an order on December 9, 1996, denying the Debtor's motion for reconsideration filed December 5, 1996.

The bankruptcy judge's findings of fact and conclusions of law following a three-day trial in September 1996, are obscured by the florid prose of the memorandum opinion and order which is larded with historical allusions, philosophical musings and fanciful speculations as to matters wholly irrelevant to the issues before the court. The following statement of relevant facts appears to be undisputed.

New Allied Development Company ("NADC") acquired real property in Black Hawk, Colorado in December 1990 (the "casino property") in exchange for some of its stock. NADC intended to build a gambling casino on that property and retained architects and engineers for that purpose. Because of contamination from mining operations on the property, NADC was required to enter into an agreement with the Environmental Protection Agency ("EPA") in the form of an Administrative Order on Consent for Removal Action in early 1992. In the spring of that year, NADC transferred title to the casino property to its wholly owned subsidiary, Tommyknocker. To avoid the filing of mechanics' liens for the debts due to the architects and engineers for their services, Tommyknocker and NADC issued a promissory note for $475,000 to those parties on March 3, 1993, secured by a deed of trust on the property. For convenience, this transaction was referred to as the Semple Brown deed of trust. The note provided that the indebtedness was "due on sale."

On July 29, 1993, NADC and Tommyknocker entered into a contract to sell the casino property to Monolite Industries. (Exhibit 2). Monolite Industries, as specified in the sales contract, later changed its name to Country World. The contract set the purchase price at $11,492,500 to be paid as follows: $600,000 in cash at closing; a promissory note for $3,450,000 with interest at 8% per annum with monthly payments over 10 years to commence when a casino opened or

15 months from the closing date, whichever occurred first, and 2,250,000 shares of stock valued at $3.33 per share.

Closing on this real estate contract occurred on August 6, 1993. Tommyknocker did not then have the funds necessary to pay the Semple Brown note and obtain a release of that deed of trust. The Semple Brown parties agreed to waive the due on sale requirement and Country World and Tommyknocker provided in their July 29, 1993 agreement that "[u]pon payment of at least $725,000 as a principal reduction," Tommyknocker would pay the outstanding obligations and the land would be free and clear of those encumbrances. (Exhibit 2). This agreement was reflected in the following language in the note:

> Notwithstanding the foregoing, in the event that Holder receives from Maker a minimum of SEVEN HUNDRED TWENTY–FIVE THOUSAND DOLLARS ($725,000) as the Accelerated Principal and Interest Payment, Holder shall immediately secure the release of the lien of that certain Deed of Trust and Security Agreement currently encumbering the Property [ (*i.e.* the Semple Brown deed of trust) ] . . . .

(Exhibit 3).

The purchase agreement also included a promise by Country World to use its best efforts to raise $3 million from the sale of its stock and to apply two-thirds of the received funds, to a maximum of $950,000, to the principal indebtedness due to Tommyknocker. Country World received $600,000 from the sale of stock but balked at paying $400,000 to Tommyknocker. The parties then agreed to delay payment. Under their amended agreement, Country World paid $551,774.74 to Tommyknocker on January 13, 1995. That money was obtained from Holly Products in a stock transaction between it and Tommyknocker for Country World stock held by Tommyknocker. Tommyknocker accepted this payment as satisfying past note payments for November and December 1994, January 1995, and past due accelerated payments.

The January 13, 1995 payment by Country World triggered Tommyknocker's obligation under the promissory note to secure the release of the Semple Brown deed of trust. Tommyknocker did not pay the indebtedness to release the Semple Brown deed of trust at this time because it had other past due obligations and expected to negotiate a lower payment with the Semple Brown parties.

Country World made monthly payments of $33,184.30 in February, March and April 1995. When Country World failed to make its May 1995 payment, Tommyknocker began foreclosure proceedings. Country World responded by filing its Chapter 11 bankruptcy petition on October 12, 1995. In the course of those proceedings, the bankruptcy court authorized the Debtor to proceed with a new financing plan whereby it obtained a $5 million loan secured by the casino property and Tommyknocker's note and deed of trust were transferred to the loan proceeds.

At the time Tommyknocker transferred the property title to Country World, Tommyknocker had not performed the environmental cleanup of the property as outlined in the 1992 Administrative Order. Tommyknocker did, however, arrange for the environmental remediation after Country World took possession and Country World reimbursed Tommyknocker for its costs, approximately $650,000.

Tommyknocker's cross appeal claims error in the bankruptcy judge's denial of its claim for default rate interest on the note. The note provided for a default rate of 18% per annum which would begin with the failure of Country World to make the monthly installment payment on May 6, 1995. The bankruptcy judge denied the default rate interest by determining that the purchase and sale agreement, the Debtor's note, the Debtor's deed of trust, the bill of sale, the warranty deed and the post closing amendments all constituted a single agreement which both parties breached simultaneously. He concluded that Tommyknocker was obligated by the terms of the Debtor's note to immediately secure the release of the Semple Brown deed of trust upon receipt of the Debtor's payment in January 1995, but that "immediately" had been interpreted by the parties to mean about 90 days in their performance of a related agreement for the issuance of stock,

thereby making Tommyknocker's breach at about the time of Country World's failure to make its installment payment in May 1995.

■ The interpretation of contracts is a matter of law, reviewable *de novo*. Tommyknocker contends that it did not sign the Debtor's note and made no enforceable promise to remove the Semple Brown trust deed at any particular time. It contends that "immediately" is a term that must be construed in context, considering the purposes of the agreement. This court agrees. This is not, however, a case in which a breach by the creditor excuses the debtor from paying the note. The issue is simply whether the debtor was in default, beginning on May 7, 1995, in the failure to make monthly payments. Thus, the controlling question is whether the failure by Tommyknocker to use the money it received on January 13, 1995, to retire the indebtedness due to Semple Brown and release that deed of trust was a failure to perform a condition precedent to those monthly payments. The answer to that question is yes. The agreed exchange for the debtor's payment of the purchase price for this property was the transfer of marketable title. The purchase contract was closed with the Semple Brown deed of trust existing as a recognized encumbrance which the seller was obligated to remove immediately after receipt of the January 13, 1995 partial payment. While Tommyknocker's failure to secure the release of the Semple Brown deed of trust did not excuse all performance by Country World, it did justify the Debtor's withholding monthly payments until the condition had been satisfied. There is, therefore, no reversible error in the bankruptcy judge's denial of default interest.

■ Similarly, the bankruptcy judge did not err in awarding 8% interest to Tommyknocker. Country World argues that Tommyknocker is not entitled to any interest, citing the provision of the promissory note that states Tommyknocker is to receive "interest on the Indebtedness at eight percent (8%) per annum ("Interest") for so long as there exists no default under this Note." (Exhibit 3). This provision does not restrict Tommyknocker's right to receive interest on the indebtedness. Rather, the provision is consistent with the later clause that provides for payment to Tommyknocker of eighteen percent interest upon default by Country World. All of the language in the promissory note regarding default concerns default by the Debtor. The interest continued to accumulate in the same manner as it did during the fifteen months after closing before the first monthly payment became due.

■ Country World claims an offset of approximately $650,000 for its payments to Tommyknocker for the environmental cleanup of the property pursuant to the EPA's administrative order requiring removal of contaminated soil. Country World argues that the order constituted an encumbrance which the seller was obliged to remove under the warranty deed and that any contrary language in the purchase agreement was merged into the covenant against encumbrances in the deed. The operative language of the purchase agreement is in the following paragraph:

> Monolite is agreeing to purchase the Real Property upon the assumption that NADC has received EPA general approval of a cleanup program on the Real Property. Monolite's obligation to close the acquisition is subject to the condition that none of the parties hereto shall have discovered any materially adverse environmental problems with the Real Property or that the cost of the currently proposed cleanup work shall not materially exceed the present estimate of $200,000 to $250,000 to complete.

(Exhibit 2).

■ The bankruptcy judge concluded that this paragraph simply gave the purchaser a "chance to back out of the deal *prior to closing* if it was discovered that the cleanup would be substantially more than $250,000." *In re Country World,* 202 B.R. at 511 (emphasis in original). He found that the uncontroverted evidence was that all factual information relevant to this matter was disclosed to Country World before closing and that the higher costs first became known when the work was in progress. He also found that the parties agreed, orally, that to avoid the delay that would result if Country World

were to begin the administrative process with the EPA on its own, Tommyknocker would perform under the 1992 order and be reimbursed by Country World. Country World paid the $650,000 in performance of that agreement. This court agrees with the interpretation of the purchase agreement and these factual findings of an oral agreement are supported by the evidence. The merger doctrine has no applicability to this collateral agreement that the parties intended to perform after delivery of the deed. *Skidmore v. First Bank of Minneapolis,* 773 P.2d 587, 590 (Colo.Ct.App.1988).

Moreover, other courts and commentators have concluded that environmental contamination is not an encumbrance on title. *Lick Mill Creek Apartments v. Chicago Title Ins. Co.,* 231 Cal.App.3d 1654, 283 Cal.Rptr. 231, 238 (1991); *Cameron v. Martin Marietta Corp.,* 729 F.Supp. 1529, 1532 (E.D.N.C. 1990); *Chicago Title Ins. Co. v. Kumar,* 24 Mass.App.Ct. 53, 506 N.E.2d 154, 156 (1987); *United States v. Allied Chemical Corp.,* 587 F.Supp. 1205, 1206 (N.D.Cal.1984); 16 Powell on Real Property § 92.13[3] at 92–59 (1998).

Colorado courts have recognized that while knowledge of an encumbrance or defect in title is not a defense to an action for breach of warranty against encumbrances, the rule does not apply when the vendee assumes the obligation of removal. *McClellan v. Morris,* 71 Colo. 304, 206 P. 575, 577 (1922).

The final issue in this appeal is Tommyknocker's claim for attorneys' fees and costs of collection. Reasonable fees and costs are allowable under 11 U.S.C. § 506(b) on a secured claim when the value of the property is greater than the allowed claim and the underlying agreement so provides. The Debtor's note includes the following language:

> Upon the occurrence of any of the foregoing Events of Default.... Maker shall pay to Holder on demand any and all expenses and costs of collection, including legal expenses and reasonable attorneys' fees incurred or paid by Holder in protecting or enforcing the obligations of Maker and all rights of Holder hereunder, whether or not

an action shall be instituted to enforce this Note.

(Exhibit 3).

▓ The bankruptcy judge denied this portion of the claim by holding that neither the Debtor nor the claimant was a "prevailing party." The record shows that the Semple Brown note was paid and the trust deed released during the bankruptcy proceeding as a part of the refinancing pursuant to the court's order. Accordingly, at the time of the filing of the bankruptcy petition, the Debtor's note was not in default and Country World had no obligations due because the condition precedent to payment had not been met. The bankruptcy judge did nor err in his ruling denying costs of collection.

Tommyknocker has objected to footnote four in the memorandum opinion and order. It reads as follows:

> As an aside, the Court has wondered throughout this hearing just what authority Hull has from the shareholders and directors of NADC because it appears that she has operated as if she is the sole shareholder and director with no fiduciary responsibilities to anyone else. The Court was also puzzled by the conspicuous absence of Hull's physician brother.

*In re Country World,* 202 B.R. at 503 n. 4.

This comment was without any evidentiary foundation and is wholly irrelevant to the issues presented by the parties. The suggestion of such a breach of fiduciary obligations "as an aside" is wholly unwarranted and inappropriate. Because the opinion has been published, the appropriate remedy is to cause this opinion also to be published with this comment that readers of the bankruptcy judge's opinion should consider that footnote as stricken.

Upon the foregoing, it is

ORDERED that the bankruptcy court judgment is affirmed.

## JUDGMENT

Pursuant to the Memorandum Opinion and Order by Chief Judge Richard P. Matsch dated August 5, 1998, it is

ORDERED AND ADJUDGED that the bankruptcy court judgment is affirmed.