**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 23 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

### TENH CIRCUIT

In re: COUNTRY WORLD CASINOS,
INC., formerly known as Monolite
Industries, Inc., formerly known as
Innovative Medical Technology, Inc.,
a  Nevada corporation,

      Debtor.

No. 98-1342

COUNTRY WORLD CASINOS, INC.,

      Appellant,

vs.

TOMMYKNOCKER CASINO
CORPORATION,

      Appellee.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 96-M-2823)**

Gary S. Cohen, Denver, Colorado (Arthur Lindquist-Kleissler, Lindquist-Kleissler
& Cooper, L.L.C., Denver, Colorado, with him on the briefs) for Appellant.

Michael E. Romero (Kathryn A. Wingard, with him on the briefs), Pendleton,
Friedberg, Wilson & Hennessey, P.C., Denver, Colorado, for Appellee.

Before **ANDERSON**, **TACHA,** and **KELLY**, Circuit Judges.

**KELLY**, Circuit Judge.

Debtor Country World Casinos, Inc. ("Country World") appeals from a district court order affirming a bankruptcy judge's order for payment of the secured claim of Tommyknocker Casino Corp. ("Tommyknocker") and denial of Country World's claim of offset in a Chapter 11 proceeding in the bankruptcy court. Our jurisdiction arises under 28 U.S.C. §§ 159(d) and 1291, and we affirm in part and reverse in part.

Background

This case arises out of the sale of real property in Black Hawk, Colorado from Tommyknocker to Country World. The property was acquired by New Allied Development Company ("NADC") in 1990. NADC hired architects and engineers to design a casino on the property and entered into a consent agreement in 1992 with the Environmental Protection Agency ("EPA") to remove contaminated soil from the property. NADC then transferred title to the property to Tommyknocker, its wholly-owned subsidiary. To avoid the filing of mechanics' liens for the amount owed to the architects and engineers for their services, Tommyknocker and NADC issued a promissory note to those parties for $475,000 in March of 1993, secured by a deed of trust on the property. This deed

of trust is referred to as the Semple Brown Deed of Trust. The note provided that the indebtedness was due upon sale of the property.

On July 29, 1993, NADC and Tommyknocker entered into a written contract to sell the property to Monolite Industries, which later changed its name to Country World. The purchase price of $11,492,500 was to be paid as follows: $600,000 in cash at closing; a promissory note ("Note") for $3,450,000, secured by a second deed of trust on the property; and 2,250,000 shares of Country World preferred stock valued at $3.33 per share. Closing took place on August 6, 1993. As noted above, the Semple Brown parties held a first deed of trust on the property. Because Tommyknocker did not then have enough funds to pay off the Semple Brown note, the Semple Brown parties agreed to waive the due-on-sale requirement. In their July 29 acquisition agreement, Tommyknocker and Country World provided that "[u]pon payment of at least $725,000 as a principal reduction," Tommyknocker would pay off the Semple Brown note and the land would be unencumbered by the Semple Brown Deed of Trust. Aplt. App. at 134. This obligation was also reflected in the Note:

> Notwithstanding the foregoing, in the event that Holder receives from Maker a minimum of SEVEN HUNDRED TWENTY-FIVE THOUSAND DOLLARS ($725,000) as the Accelerated Principal and Interest Payment, Holder shall immediately secure the release of the lien of that certain Deed of Trust and Security Agreement currently encumbering the Property . . . .

Aplt. App. at 149.

Tommyknocker received the amount necessary to trigger its obligation by January of 1995, but failed to secure the release of the Semple Brown Deed of Trust. Country World made its monthly payments of $33,184.30 on the Note in February, March, and April of 1995, but suspended payment in May of 1995. Tommyknocker then began foreclosure proceedings in state court, and Country World filed its bankruptcy petition in October of 1995. As part of its reorganization, Country World obtained financing in May of 1996 from a third party in order to pay off the Note. Because there was a dispute about the amount owed to Tommyknocker, Country World paid the undisputed amounts owed and deposited the balance in an escrow account, pending the bankruptcy court's secured claim hearing.

At the time Tommyknocker transferred title of the property to Country World, it had not performed the environmental cleanup as required by the 1992 consent agreement with the EPA. However, Tommyknocker arranged for the remediation after Country World took possession of the property, and Country World reimbursed Tommyknocker for its costs, approximately $650,000.

After a three-day hearing in September of 1996, the bankruptcy court issued its findings of facts and conclusions of law as to the parties' liability under the Note and Country World's claimed offset for the costs of the environmental remediation. Both parties appealed to the district court, which affirmed the order

of the bankruptcy court. However, the district court reversed the bankruptcy court's finding of simultaneous defaults under the Note, holding that "the failure by Tommyknocker to use the money it received on January 13, 1995, to retire the indebtedness due to Semple Brown and release that deed of trust was a failure to perform a condition precedent to [Country World's] monthly payments." In re Country World Casinos, Inc., 223 B.R. 809, 812 (D. Colo. 1998). Thus, the court found that Country World was justified in withholding its monthly payments beginning in May of 1995. Nonetheless, the court upheld the bankruptcy court's refusal to suspend interest on the Note during the time that Country World withheld monthly payments. Further, the district court upheld the bankruptcy court's denial of a $650,000 offset for Country World's payments to Tommyknocker for the environmental remediation.

In this appeal, Country World contends that the district court erred by (1) holding that Country World was required to pay interest on the Note during the time that it justifiably withheld monthly payments; (2) failing to award attorney fees, costs and expenses to Country World as the "prevailing party" in litigation related to the note; and (3) holding that the environmental contamination on the property did not constitute an encumbrance, and thus denying Country World an offset for the amount it paid for remediation.

Discussion

"In reviewing the decision of a bankruptcy court pursuant to 28 U.S.C. §

158(a) and (d), the district court and the court of appeals apply the same standards

of review that govern appellate review in other cases. We therefore review the

bankruptcy court's legal determinations de novo and its factual findings for clear

error." In re Hedged-Investments Assocs., Inc., 84 F.3d 1267, 1268 (10th Cir.

1996).

## A. Interest on the Note

The district court held that, because Country World had bargained for

transfer of marketable title, securing the release of the Semple Brown Deed of

Trust was a condition precedent to Country World's monthly payments.

Tommyknocker did not satisfy this condition in January of 1995, and thus the

court found that Country World was justified in withholding monthly payments.

Neither party appeals from this decision, although Tommyknocker argues in its

brief that the court erred in its interpretation of the contract, stating that we must

review the issue de novo. However, because Tommyknocker did not file a cross-

appeal, we may not consider this issue. See Roe v. Cheyenne Mountain

Conference Resort, Inc., 124 F.3d 1221, 1227 (10th Cir. 1997).

Given this district court finding, the question remains whether the court

erred in holding that Tommyknocker was entitled to interest on the Note during the time that Country World justifiably withheld its monthly payments. Country World presents two arguments that Tommyknocker was not entitled to interest, one based upon the language of the Note itself and the second based upon equitable principles.

Country World first argues that the Note expressly provides that the interest would be suspended upon default of one of the parties: Tommyknocker was to receive "interest on the Indebtedness at eight percent (8%) per annum ('Interest') for so long as there exists no default under this Note." Aplt. App. at 148. The district court found that, based on its reading of the remainder of the Note, this provision refers solely to potential default by Country World and thus does not authorize a suspension of interest upon default by Tommyknocker. We agree. Each of the "Events of Default" identified in the Note concern Country World, and the Note provides remedies for Tommyknocker upon default by Country World. See id. at 149-151. Thus, the above-quoted provision does not provide Country World the relief it seeks.

However, we find persuasive Country World's equitable argument for suspending interest. Although the cases cited by both parties do not provide a clear answer, except when a creditor's improper acts or omissions prevent a debtor from paying, we ultimately decide the issue based on the principle that "a

party to a contract cannot claim its benefits where he is the first to violate its terms." Western Plains Serv. Corp. v. Ponderosa Dev. Corp., 769 F.2d 654, 657 (10th Cir. 1985).

Liberty State Bank & Trust v. Hemisphere Dev. Group, Inc., 296 N.W.2d 241 (Mich. Ct. App. 1980), relied upon by Country World, is not applicable to the facts of this case. There the court stated that "if the failure to make payment on a note is due to any improper act or omission of the creditor, or to any conduct on behalf of the creditor that prevents the debtor from complying with his obligation to pay, accrual of interest on the note is suspended." Id. at 244 (citing Michaels v. Mellish, 222 N.W.2d 247 (Mich. Ct. App. 1974)) (emphasis added). Country World reads the emphasized disjunctive "or" as distinguishing between an improper act of the creditor and conduct which prevents the debtor from meeting his obligation to pay. Following this reading, Country World concludes that, because Tommyknocker's failure to obtain a release on the Semple Brown Deed of Trust was an "improper act," interest on the Note should be suspended. We disagree with Country World's understanding of Liberty State Bank — it is clear that the disjunctive instead distinguishes between acts or omissions of the creditor and actions taken on behalf of the creditor by an agent. In either case, whether the creditor or the agent acts, the debtor must be prevented from paying before accrual of interest is suspended. An example of such a situation is provided by

Michaels, the case cited by the Liberty State Bank court, where the creditor repudiated the contract and informed the debtor that he would accept no further payments. It is clear that such a situation is not present in this case — Tommyknocker in no way repudiated the contract and otherwise did nothing to "prevent" Country World from making its monthly payments.

Tommyknocker argues that Fisk v. Powell, 84 N.W.2d 736 (Mich. 1957), and Bendik v. Sommer Bros. Constr. Co., 205 A.2d 692 (Pa. Super. Ct. 1964), establish that Country World remained obligated to pay interest. In Fisk, the Michigan Supreme Court held that the sellers' breach of the covenant against encumbrances did not excuse the buyers' failure to make payments and did not suspend the accrual of interest. See Fisk, 84 N.W.2d at 741-42. However, Fisk is distinguishable from this case in that the district court here held that Tommyknocker's breach excused Country World's suspension of monthly payments; thus the obligations of the parties were not independent as they were in Fisk.

Bendik is also distinguishable from this case. There, a subcontractor filed a mechanics' lien in violation of the contract with the defendants. See Bendik, 205 A.2d at 693. The Pennsylvania Superior Court held that, although the defendant was not obliged to pay the amount due while the lien was on file, the defendant was required to pay interest on this amount. See id. This was because

the money was due when the work was completed, which was a few days prior to the filing of the lien. The court held that, by not paying the amount when due, the defendant breached the contract first and thus that it would have been inequitable to suspend the accrual of interest. See id. Bendik differs from our case in that, according to the district court, Country World did not breach the contract. Thus the equities do not favor Tommyknocker.

Country World views Sjoberg v. Kravik, 759 P.2d 966 (Mont. 1988), as the most factually analogous case. There the court affirmed the trial court's finding that, because of the defendants' material breach, no interest would accrue on the contract between the date of the breach and the time the defendants met their obligation under the contract. See id. at 969-70. In that case, the defendants sold the plaintiff some real property which was encumbered by a mortgage. Under the contract, the defendants were to pay off the mortgage within a year, but failed to do so for another five years. See id. at 967. As a result, the plaintiff alleged that he was unable to obtain financing to develop the land and thus suffered significant damages. See id. at 968. The case is unclear as to whether interest should be suspended simply because there was a material breach, or because the breach caused damages to the plaintiff. Not surprisingly, Tommyknocker argues for the latter interpretation, and concludes that since Country World suffered no damages, it must pay the accrued interest. Whether Country World suffered

damages as a result of Tommyknocker's breach is a factual question that the bankruptcy court did not decide, and, because our function is not to make such findings, we will not decide it here.[1]

Although we are inclined to read Sjoberg more broadly than Tommyknocker, we need not base our decision on that case because our language in Western Plains Serv. Corp. v. Ponderosa Dev. Corp., 769 F.2d 654 (10th Cir. 1985), persuades us that interest should have been suspended while Country World justifiably withheld its monthly payments. See id. at 657 ("The law is well settled that a party to a contract cannot claim its benefits where he is the first to violate its terms.") (citing Navato v. Sletten, 560 F.2d 340, 346 (8th Cir. 1977)). It is clear that the eight-percent interest on Country World's principle indebtedness of $3,450,000 was a benefit to Tommyknocker. The Note also provides that the principle may be prepaid at any time without penalty. See Aplt. App. at 151. Country World prepaid the principle in May of 1996 when it obtained financing from a third party. There is no question that by so doing, Country World was not liable for interest that would otherwise have been due after that date. However, to allow the accrual of interest from May of 1995, when

---

[1] Country World filed a motion for leave to file a supplemental appendix in order to respond to Tommyknocker's argument that Country World suffered no damages as a result of Tommyknocker's breach. Because we will not address that issue, we deny Country World's motion.

Country World justifiably withheld payment, until May of 1996, when Country

World prepaid the principle, would penalize Country World while benefitting

Tommyknocker.[2]  Thus we hold that interest should have been suspended during

this time.

### B.  Attorney Fees, Costs and Expenses

Country World next argues that the district court erred in failing to award

attorney fees, costs and expenses to Country World as the "prevailing party" in

---

[2]  Although the Note does not address the payment of interest in this situation, the nature of Tommyknocker's breach persuades us that interest should be suspended.  The record indicates that Tommyknocker did not pay off the Semple Brown Deed of Trust because (1) it had other past due obligations, see In re Country World Casinos, Inc., 223 B.R. at 810, and (2) it never intended to pay face value, see Aplt. App. 104.  The bankruptcy court credited the testimony of Tommyknocker's president that she thought the Semple Brown parties had charged too much and she never intended to pay them $475,000.  See id.  The bankruptcy court found that she:

> always intended to try and chisel them down, even after she had signed the Semple Brown promissory note on March 5, 1993, even after she had signed the sales contracts on July 14 and July 29, 1993, which required pay off of Semple Brown, and even after she signed an Amendment to the Semple Brown promissory note on August 6, 1993 . . . which provided for TKCC and NADC "to pay the entire principal balance and all unpaid accrued interest" when TKCC had received the $750,000 from the Debtor.

Id.  Moreover, when Country World justifiably withheld its monthly payments, Tommyknocker foreclosed, resulting in Country World filing its Chapter 11 bankruptcy petition.  See In re Country World Casinos, Inc., 223 B.R. at 811.

litigation related to the Note. Section 9 of the Tommyknocker Deed of Trust provides that the prevailing party in any proceeding which in any way affects or relates to the Note "shall be awarded all costs incurred, including without limitation, reasonable attorneys' fees." Aplt. App. at 157.

The only dispute between the parties is whether Country World should be considered the prevailing party. Tommyknocker asserts that because Country World did not prevail on its interest claim and its environmental setoff claim, it cannot be considered the prevailing party. However, in Dennis I. Spencer Contractor, Inc. v. City of Aurora, 884 P.2d 326, 332 (Colo. 1994) (en banc), the Colorado Supreme Court held that "where a claim exists for a violation of a contractual obligation, the party in whose favor the decision or verdict on liability is rendered is the prevailing party for purposes of awarding attorney fees." This is so regardless of whether the party who wins on the issue of liability is able to recover any damages, unlike civil rights cases. See id. at 330, 331; Travers v. Rainey, 888 P.2d 372, 375 (Colo. App. 1994).

In this case, the bankruptcy judge found that both parties had breached simultaneously and thus there was no prevailing party. However, the district court found that Tommyknocker had breached the contract and that Country World in response justifiably withheld its monthly payments. The district court further found that Country World was not in default and as a result was not liable

- 13 -

to Tommyknocker for the eighteen-percent default interest under the Note. These findings are not in dispute, and the predominant matter before the bankruptcy court was liability under the Note. Thus we hold that Country World is the prevailing party under the standard articulated in City of Aurora and Travers. As such, Country World is entitled to reasonable attorney fees and costs pursuant to the contract.

## C. Environmental Remediation Offset

The district court held that environmental contamination is not an encumbrance on title and thus that Country World was not entitled to a set-off for the amount paid to Tommyknocker for remediation. Country World maintains that the court erred in so holding and that the doctrine of merger nullifies an alleged oral agreement whereby Country World agreed to pay for the cleanup, as well as any agreement contained within the Acquisition Contract. The Acquisition Contract provided:

> Monolite is agreeing to purchase the Real Property upon the assumption that NADC has received EPA general approval of a cleanup program on the Real Property. Monolite's obligation to close the acquisition is subject to the condition that none of the parties hereto shall have discovered any materially adverse environmental problems with the Real Property or that the cost of the currently proposed cleanup work shall not materially exceed the present estimate of $200,000 to $250,000 to complete.

Aplt. App. at 135-36. Country World argues that there is no implied promise or

commitment contained within this clause that it would be required to pay for the cleanup; instead, the clause was inserted because of Country World's concern about Tommyknocker's inability to pay for the cleanup. Country World's entire argument on this issue is premised upon its assertion that environmental contamination is an "encumbrance" for the purposes of the covenant against encumbrances in a warranty deed.

Black's Law Dictionary (6th ed. 1990) defines a "covenant against encumbrances" as "[a] stipulation against all rights to or interests in the land which may subsist in third persons to the diminution of the value of the estate granted." Id. at 364. Country World quotes the following language from Feit v. Donahue, 826 P.2d 407 (Colo. Ct. App. 1992):

> An encumbrance within the meaning of the covenant is a right or interest in the land which diminishes the value of, but is not inconsistent with the ability to convey, fee title. It includes "any burden resting not only on the title to the real estate, but on the real estate itself which tends to lessen the value or interfere with its free enjoyment."

Id. at 410 (quoting 7 G. Thompson, Real Property § 3183 at 272 (1962)). Feit dealt not with environmental contamination, but with an existing zoning violation which the court held to be an encumbrance.

The broad language from Feit seems to support Country World's assertion that the environmental contamination also constitutes an encumbrance. Country World also relies on Jones v. Melrose Park Nat'l Bank, 592 N.E.2d 562 (Ill. App.

Ct. 1992), where the court held that "the presence of hazardous waste materials . . . is sufficient to preclude defendant from tendering merchantable title to plaintiff." Id. at 568. In that case, the seller specifically warranted that it had received no notice of EPA violations, despite its knowledge that there was a soil contamination problem and that an EPA penalty had been proposed before and after the contract was signed.

However, the majority of cases hold otherwise. In HM Holdings, Inc. v. Rankin, 70 F.3d 933, 936 (7th Cir. 1995), the Seventh Circuit stated that "every court that has addressed the issue has refused to expand the marketable title doctrine to make the presence of hazardous waste an encumbrance on title," and opined that a buyer's remedy in situations where environmental cleanup is required "would have been to include an environmental contingency clause in the contract or to insist on warranties against such conditions." See also Donahey v. Bogle, 987 F.2d 1250, 1254 (6th Cir. 1993), vacated on other grounds, 512 U.S. 1201 (1994) ("[A]n 'encumbrance' is . . . something . . . that diminishes the value of the title to the property; environmental contaminants may diminish the value of the realty, but they do not constitute an encumbrance because they do not affect title."); Cameron v. Martin Marietta Corp., 729 F. Supp. 1529, 1532 (E.D.N.C. 1990) (holding that, although defendant transferred property which was contaminated by chemicals in violation of state and federal regulations, plaintiffs

failed to state a claim for breach of warranty against encumbrances); <u>United States v. Allied Chem. Corp.</u>, 587 F. Supp. 1205, 1206 (N.D. Cal. 1984) (The term "encumbrance" includes "only liens, easements, restrictive covenants and other such interests in or rights to the land held by third persons"; it "does not extend to the presence of hazardous substances.").

The overwhelming weight of authority thus indicates that the district court did not err in holding that the environmental contamination was not an encumbrance. The one case to decide otherwise, <u>Jones v. Melrose Park Nat'l Bank</u>, can be reconciled in that the seller specifically warranted that there were no environmental problems on the property. <u>See</u> <u>Jones</u>, 593 N.E.2d at 564. In that situation, the existence of hazardous waste did constitute an encumbrance. Here, by contrast, there was no specific warranty regarding environmental conditions on the property; in fact, Country World knew of the needed remediation and reimbursed Tommyknocker for its costs of cleaning up the property. Furthermore, although the acquisition agreement mentioned a $250,000 cap on remediation costs, it clearly referred to Country World's right to back out of the deal prior to closing should "materially adverse environmental problems" be discovered or estimated cleanup costs exceed $250,000. Aplt. App. at 135-36. Neither of these conditions on acquisition was met prior to closing, and by its terms the $250,000 limit does not apply to excess costs subsequent to closing. Because the

environmental contamination was not an encumbrance, and because the $250,000 cap did not apply to actual cleanup costs after closing, the bankruptcy court did not err in denying an offset to Country World.

We AFFIRM the bankruptcy court's decision as to Country World's claimed offset for environmental remediation costs, REVERSE the district court's holding that Country World was required to pay interest on the Note after May of 1995, and REMAND to the bankruptcy court to make determinations consistent with this opinion.

No. 98-1342, <u>Country World Casinos v. Tommyknocker Casino</u>

**ANDERSON**, Circuit Judge, dissenting in part:


I respectfully dissent from that part of the majority opinion reversing the district court's holding that Country World was required to pay interest on the Note after May of 1995. The majority holds that allowing the accrual of interest would be inequitable because it would "penalize Country World while benefitting Tommyknocker." Majority op. at 12. I disagree.

Denying the accrual of interest following Tommyknocker's breach amounts to an additional penalty on Tommyknocker, apart from any obligation it would have to pay damages to Country World, if any had been proven, following its breach. Moreover, it could amount to a windfall for Country World, which had the use of the money justifiably withheld. Finally, the case upon which the majority primarily relies for this equitable holding, <u>Western Plains Serv. Corp. v. Ponderosa Dev. Corp.</u>, 769 F.2d 654 (10th Cir. 1985), is factually different from this case, and makes it clear that the analysis of whether accrued interest should be paid following a breach is much more complicated than simply inquiring into which party first violated the terms of the contract. In short, I think the district court's analysis and disposition of this issue was cogent and correct, and, for the reasons stated in its opinion, I would affirm the district court's judgment in its entirety.